**FANNIE MAE, Appellant,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for FirstSouth, F.A., Appellee.**

**No. 91–1866.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1991.

Decided July 23, 1992.

John P. Gill, Little Rock, Ark., argued, for appellant.

Randal K. Miller, Little Rock, Ark., argued, for appellee.

Before LAY,* Chief Judge, WOLLMAN and HANSEN, Circuit Judges.

LAY, Chief Judge.

This is an action arising from an alleged breach of contract brought by Fannie Mae, a federally chartered, privately owned corporation that participates in the secondary residential mortgage market. The suit was brought against the Federal Deposit Insur-

---

* The HONORABLE DONALD P. LAY was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

ance Corporation (FDIC) as receiver for FirstSouth, F.A. (FirstSouth), which had originally contracted with Fannie Mae to service the various mortgages. The damages sought by Fannie Mae arise from losses involving twenty-eight loans and total over $850,000. Fannie Mae asserts that FDIC had an obligation under the contract to indemnify it with respect to those losses.

The district court[1] entered judgment against Fannie Mae holding that (1) no obligation arose under the contract to indemnify Fannie Mae for losses incurred after Fannie Mae had terminated the servicing agreement with FDIC, and (2) a settlement was effectuated by Fannie Mae and FDIC which terminated all obligations of FDIC.[2] We affirm.

On February 9, 1983, FirstSouth, a Pine Bluff, Arkansas, federally chartered savings and loan, had previously entered into a servicing agreement with Fannie Mae under a mortgage-backed securities pool purchase contract (MBS). The original servicing contract incorporated Fannie Mae's general selling and servicing guides. Under these contracts, the servicer undertakes an obligation to collect payments on loans and remit them to Fannie Mae after deducting a prescribed service fee. If a borrower fails to make a payment, the servicer-lender institutes a delinquency advance paid into the principal and interest custodial account.

FirstSouth was placed in receivership on December 4, 1986, at which time FDIC was appointed receiver. FDIC thereafter serviced these loans under an addendum to FirstSouth's contract. It is agreed that the addendum provided no new obligations on either of the parties. For reasons immaterial to this suit, on April 1, 1988, Fannie Mae terminated its service agreement with FDIC and transferred servicing of its First-South portfolio to First Commercial Mortgage Company (First Commercial).[3]

Subsequent to April 1, 1988, representatives of FDIC and Fannie Mae held meetings to discuss various account discrepancies. It is from those meetings and related correspondence that the district court found a final settlement relieving FDIC from any further liabilities. Although we find support for the district court's holding in the record, we need not pass on these findings because we find the case resolved by the express provisions of the contract.

We agree with Fannie Mae that the construction and legal effect of the written contract are questions of law. *Amerdyne Indus. v. POM Inc.*, 760 F.2d 875 (8th Cir.1985); *Duvall v. Massachusetts Indem. & Life Ins. Co.*, 295 Ark. 412, 748 S.W.2d 650 (1988). We are not bound by the district court's conclusions of law and review the contract de novo.[4]

Fannie Mae claims that the contract, addendum, and guides make it clear that under the regular servicing option, adopted by FDIC, the servicer is required to indemnify Fannie Mae for losses relating to all defaulted loans.

Fannie Mae places great emphasis on the fact that FDIC was bound by the regular

---

1. The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

2. In support of its findings, the district court observed that the individualized repurchase of specific mortgages after termination did not conflict with the receiver's rejection of the duty to indemnify; that the liquidation of mortgages by First Commercial Mortgage Company (the successor to the servicing agreement after FDIC had been terminated) evidenced the absence of any contractual duty by FDIC to indemnify Fannie Mae or to liquidate mortgages foreclosed after termination; and that Fannie Mae's failure to preserve any rights to a deficiency judgment against the borrowers following foreclosure was inconsistent with the asserted duty of indemnifi-

cation. Each of these evidentiary observations by the district court is challenged on appeal. In view of our holding that there existed no obligation for FDIC to indemnify Fannie Mae after its termination under the contract, it is not necessary to pass on these evidentiary claims.

3. The termination, pursuant to the FDIC addendum, did not release FDIC from any responsibility or liabilities that arose prior to the termination. FDIC asserts it was this clause that provided the responsibility to purchase four loans after their termination. *See supra* note 2.

4. Arkansas law is the appropriate rule of decision for the purpose of construing the contracts at issue in this case.

servicing option under the pool purchase contract where Fannie Mae collects a lower fee from the servicer in exchange for the servicer to bear the loss of any borrower default.[5]

Fannie Mae contends that section 7.17B of the MBS guide requires the servicer during the life of the contract to indemnify Fannie Mae by paying off the defaulted loan at foreclosure. This is undisputed. However, FDIC was not the servicer when foreclosure of the loans at issue occurred. Nonetheless, in its brief, Fannie Mae argues that the plain wording of the regular servicing option means that the servicer "assumes the entire risk of loss from a borrower's default." Fannie Mae argues because all of the loans were in default while serviced by FDIC, FDIC was obligated to indemnify Fannie Mae even though servicing of those loans was subsequently transferred. It is Fannie Mae's position that under the regular servicing option, when a subsequent servicer (First Commercial) liquidates the mortgage at a foreclosure sale but the default occurred while the mortgage was serviced by a prior servicer, the prior servicer (FDIC) must reimburse the subsequent servicer unless specifically excused in writing.[6]

■ We find that the express terms of the contract and the MBS guides complete-ly discharge FDIC from any alleged obligation to indemnify Fannie Mae for defaulted loans foreclosed upon after FDIC was terminated. It is important to note that at the time FDIC was terminated as servicer, although the loans were all in default, FDIC was current in making the delinquency payments into the custodial account.[7]

Section V of the contract relates to the duties of FDIC in servicing the various loans. Section V.A(6) of the contract provides: "The Lender must service each mortgage continuously from the date its servicing duties begin until ... the Lender's servicing duties are terminated according to the Section IX of this contract."

Section 1.06 of the guide provides "[t]ermination ... shall not release the Lender from any responsibility or liability on the part of the Lender that *arises prior to termination....*"[8] (Emphasis added).

However, section IX of the contract sets forth the responsibilities of the parties upon termination. It provides that "[w]hen the Contract is terminated, the *entire* relationship between the Lender and [Fannie Mae] ends (with certain exceptions that are explained *in this section*)." (Emphasis added). None of those exceptions imposes post-termination liability on FDIC.[9] There

---

**5.** In contrast, Fannie Mae states that under the *special* servicing option, not adopted by First-South, the servicer's obligation was to pay a higher fee and Fannie Mae's obligation was to bear the risk of loss.

**6.** The district court disapproved of this position by finding "at the very least" a patent ambiguity between such intentions and the clear provisions of the contract found in section V.A(6), entitled, "Service Until Needs Ends." The district court pointed out that since the contract and MBS guide were drafted by Fannie Mae, any ambiguity is, of course, construed against it. *Missouri Pac. R.R. v. Arkansas Oak Flooring Co.*, 434 F.2d 575 (8th Cir.1970); *Elcare, Inc. v. Gocio, Ex'r*, 267 Ark. 605, 593 S.W.2d 159 (1980).

**7.** The contract includes an indemnification provision limited to losses caused by a servicer's failure to perform its servicing obligations:

The Lender will indemnify Fannie Mae and hold Fannie Mae harmless against all losses, damages, judgments, and legal fees that Fannie Mae may sustain as a result of the Lender's failure to perform the services and duties incident to the servicing of the Mortgages as provided in this Guide.
Guide § 7.01. There was no evidence before the district court that the receiver or FirstSouth failed to properly service the mortgages prior to the termination of the contract.

**8.** Section X of the contract provides: "Responsibilities or liabilities of Lender that exist before the termination of this Contract will continue to exist after termination unless we expressly release the Lender from any of them in writing."

**9.** The only "exception" to the final conclusion of the servicer's monetary obligations to Fannie Mae permitted by section IX is for the payment of advances of insurance, taxes, maintenance, improvements or other necessary outlays in "participation" loans under section IX.D(3). The mortgages here are not "participation" loans because they are wholly-owned by Fannie Mae.

is no clause or wording within the contract or guides which in any way attempts to modify this section to provide FDIC with an obligation to indemnify Fannie Mae for any deficiencies after foreclosure once FDIC no longer services the loans.

There is no wording in the contract or guides which provides any indemnity agreement other than that which provides duties arising from a default by the lender during the continuation of the lending agreement. As FDIC urges, Fannie Mae's claim is not really for indemnity but for an alleged breach of a continuing obligation to reimburse Fannie Mae after foreclosure and liquidation after termination. Any such obligation is clearly foreclosed by section IX which sets forth the duties of the receiver after termination. No continuing obligation exists. The district court's observation that the regular servicing option might create "at the very least" a patent ambiguity with the termination clause was charitable indeed. No duty existed upon the servicer to liquidate a mortgage until after foreclosure had taken place. Under the express terms of the contract, once a termination had taken place, there clearly was no further duty upon FDIC to liquidate any mortgage loan existing. Section 7.01 of the guide makes this clear.

Nothing within the regular servicing option created any duties beyond the termination of the contract. Any such claim is entirely spurious.

Since we find the express language of the contract terminated all obligations of FDIC to further foreclose and liquidate the loans once FDIC was discharged, we need not pass on the other issues raised. There exists no provision within the contract, guides or servicing options requiring FDIC to indemnify Fannie Mae for any loan deficiency after termination of its agreement.

Judgment affirmed.