United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 10, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-50530

_____

In the Matter of: NEWELL INDUSTRIES, INC., Debtor

_____

CAMDEN IRON & METAL, INC.,

Appellant

versus

ANDREW B. KRAFSUR, Trustee

Appellee

Appeal from the United States District Court
For the Western District of Texas

Before GARWOOD and HIGGINBOTHAM, Circuit Judges, and FELDMAN,[*]
District Judge.

FELDMAN, District Judge:

I.

_____

[*]District Judge of the Eastern District of Louisiana, sitting
by designation.

1

Camden Iron & Metal, Inc. is a metal recycling and salvaging company engaged in shredding and processing old automobiles and appliances. The scrap that is left is sold to steel mills and aluminum foundries and processed into new products.

In April 1998, Camden agreed with Newell Industries, Inc. to buy a MegaShredder. The MegaShredder is a specialized, complex machine that is designed to shred large metal objects into fist-sized scrap metal. Newell agreed to design, manufacture and deliver an unassembled MegaShredder within 180 days for a price of $2.53 million. The deal became plagued with performance problems.

After Newell failed to meet some of its early deadlines, Camden representatives discovered that Newell had somehow arranged to sell the MegaShredder to a company in Denmark. Camden then stopped making payments. Predictably, a flurry of lawsuits followed. Newell sued Camden in Texas state court for breach of contract and interference with delivery of equipment, and Camden sued Newell for breach of contract and fraud.[1]

The parties subsequently reached an agreement which provided that Newell would complete the manufacture of the MegaShredder and Camden would monitor its progress. Three months later, however, substantial components of the MegaShredder remained unfinished.

_____

[1] The two cases were later consolidated.

In November 1999, Newell filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. Camden in turn sued Newell in bankruptcy court to prevent it from selling, transporting or disassembling the unfinished MegaShredder or any of its parts.

Thereafter, Newell and Camden reached still another agreement under Bankruptcy Rule 9019. They set a delivery date of May 20, 2000, increased the purchase price by $200,000,[2] and agreed that a Camden engineer could observe the manufacturing process and review design plans.

After Newell again failed to meet its obligations, Camden and the trustee entered one more final agreement. The terms of the last agreement were recited in open court:

1) The Newell estate will deliver the manufactured MegaShredder by July 15, 2000;

2) Camden will provide the estate a $200,000 line of credit, to be drawn on only when it spends such amount in manufacturing or when the MegaShredder is completed; and

3) Camden can oversee and direct the order in which the components are manufactured, have access to all assembly plans, specifications and drawings,[3] and will be provided an engineer to oversee assembly at its facilities.

After the last agreement, Newell's estate spent an

---

[2] The $200,000 was to be paid under a letter of credit in installments.

[3] Newell agreed to file a complete set of plans under seal with the court.

additional $209,000 making the MegaShredder's components. Camden, however, refused to pay the $200,000 fee because it claimed the trustee failed to provide it with both a supervising engineer and sufficient design plans. The trustee then moved the bankruptcy court to determine and compel compliance with the agreement.

The bankruptcy court held, among other things, that the trustee was not required to pay for Camden's supervising engineer during assembly, that Camden was entitled to all the design plans, specifications and drawings that the trustee had filed with the court, and that Camden could claim a $50,000 offset for the expenses it incurred as a result of the incomplete design plans. The district court affirmed. We affirm in part and reverse in part.

II.

The bankruptcy court's findings of fact "will not be set aside unless clearly erroneous." Matter of Faden, 96 F.3d 792, 795 (5th Cir. 1996). Conclusions of law, on the other hand, are subject to plenary review on appeal. See id. ("[W]hen a finding of fact is premised on an improper legal standard, that finding loses the insulation of the clearly erroneous rule.").

The interpretation of a contract is a matter of law, as is the determination that a contract is ambiguous, and both are reviewed de novo. See In re Liljeberg Enterprises, Inc., 304

4

F.3d 410, 439 (5th Cir. 2002). A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law. See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996).

A.  Engineer During Assembly

The appellant first contends that the bankruptcy and district courts erred by holding that the trustee was not required to provide Camden with an engineer to oversee the installation and assembly of the MegaShredder.[4]  The final agreement clearly instructs:

> The bankrupt estate will furnish at its own expense an engineer to oversee the installation and assembly of Job 559 on Camden's facilities.

Although the plain language of the agreement clearly and definitely states that the trustee was required to provide Camden with an engineer during assembly, the court nonetheless found the provision to be ambiguous because it is subject to various reasonable interpretations.[5]  In particular, the district court

---

[4] The bankruptcy court denied Camden's request for an engineer because it was not claimed in the original pleadings.  While appellant contests this finding, we need not review the bankruptcy court's rationale because neither the district court nor the appellee's brief relied on such reasoning.

[5] Camden asserts that neither the parties nor the bankruptcy court raised the issue of ambiguity below, and therefore the district court exceeded its scope of review by sua sponte raising the issue.  The interpretation of the contract and determination of ambiguity, however, is a matter of law, and the court "may conclude that a contract is ambiguous even in the absence of such a pleading

found it reasonable to interpret the agreement as capping the trustee's total expenditures at $200,000. The district court thus concluded that, after the trustee spent $200,000, all further manufacturing, installation and assembly costs, including engineers, were to be paid by Camden. We disagree with the court's reading of the agreement. The simple text requires no added complexity.

The language and intent of the agreement make clear that the $200,000 line of credit limits only the trustee's <u>manufacturing</u> expenditures. For example, the agreement states:

> If the $200,000 is reached, or if the machine is completed prior to the expenditure of $200,000, then the letter of credit will be drawn down on. If the machine is completed for a sum of less than $200,000, that money will go into a special escrow account to be used by Camden at their assembly and fit in Camden, New Jersey.

This provision contemplates a payment surplus after manufacturing at Newell's headquarters, but prior to assembly and fit at Camden's facilities. If the $200,000 had been intended to limit the trustee's total expenditures, as the district court believed, a payment surplus could never exist until manufacture and assembly has been completed. The court's interpretation that the trustee's total expenditures were limited at $200,000 is at odds with the agreement's direct language.

---

by either party." <u>Sage St. Assoc. v. Northdale Constr. Co.</u>, 863 S.W.2d 438, 445 (Tex. 1993).

6

The estate contends, in the alternative, that the agreement could be read to require it to provide an engineer only "if the MegaShredder was not completed and Camden was forced to attempt to complete the [manufacturing of the] MegaShredder on its own." Such an interpretation is similarly baseless because it contravenes other provisions within the agreement.

The agreement states that the "bankrupt estate will furnish at its own expense an engineer to oversee the installation and assembly of Job 559 on Camden's facilities." If the trustee failed to finish the manufacturing of the MegaShredder, there would be no installation or assembly for an estate-financed engineer to oversee. The engineer would supposedly oversee the completion of the manufacturing process only. The estate's interpretation directly conflicts with the language of the engineer provision, which is expressly limited to oversight during the assembly phase. Moreover, if the parties had intended for an engineer to be provided at the manufacturing phase, or for the engineer costs to be included as part of the $200,000 line of credit, the parties would have included such language in their agreements. They did not. Thus, we find the estate's interpretation unreasonable.

Given the clear and certain language of the agreement, and the unreasonableness of offered alternative interpretations, we find that the district court erred in holding that the last agreement is ambiguous. The agreement clearly dictates that the

7

trustee provide Camden with an engineer during assembly. We reverse the finding of the bankruptcy and district courts, and remand for a determination of the cost incurred by Camden in obtaining an engineer.[6]

B.   Assembly Plans, Specifications, and Drawings

The appellant next asserts that the bankruptcy court erred by holding that Camden was entitled to only those plans, specifications, and drawings that the trustee had filed with the court, and by awarding Camden only a $50,000 offset for the expenses incurred as a result of the incomplete plans. We find that such claims are without merit.

The agreement makes clear that the trustee was required to provide Camden "access at all times to plans and specifications . . . through assembly and fit."[7] The trustee agreed to file under seal a complete set of the design documents to assist Camden should the estate not complete its manufacturing obligations.[8]

---

[6] The Trustee's award should be offset by this amount.

[7] Newell initially agreed to provide Camden only those "drawings necessary for foundation, electrical and plumbing installation." After litigation ensued, however, Camden became concerned that Newell would not complete the MegaShredder, and the parties stipulated that a Camden representative would be able to review the "plans, specifications, drawings, shop drawings and construction drawings" while monitoring Newell's performance.

[8] The parties agreed that the sealed documents would be transferred to the bankruptcy court, and "held pending the construction and delivery of the MegaShredder." If the complete

Unbeknownst to Camden, however, the trustee did not file a complete set of plans with the court.

When the trustee failed to give Camden's engineer a set of design plans, Camden sought access to all plans that the trustee had filed under seal, and requested an offset for the expenses it incurred as a result of the incomplete plans. The bankruptcy court held that Camden could review all the design plans filed under seal,[9] and that it was entitled to a $50,000 offset on the MegaShredder purchase price.

Upon review of the plans under seal, however, Camden realized that the estate had failed to file a complete set of plans with the court. Although the $50,000 offset was based upon testimony taken prior to this discovery, the bankruptcy court refused to reopen the damages issue.[10]

Camden first appeals the decision to release only those plans filed under seal. Camden peculiarly contends that the

---

plans were not delivered, Camden could obtain the documents under a one-time license agreement.

[9] The order was conditioned on a confidentiality agreement not to disclose the contents to third parties except for fabrication purposes in which case the third party also had to sign a confidentiality agreement. The confidentiality agreement was necessary to protect a third party which had purchased the intellectual property rights to the plans from the trustee.

[10] The district court affirmed the bankruptcy court's ruling that Camden was entitled to the drawings under seal. It noted, however, that the missing drawings had been sold and the bankruptcy court could not order access to them.

court erred by granting its motion for access to plans under seal; it asserts that the court should have instead ordered the trustee to produce all plans, specifications, and drawings.[11] Because the requested relief exceeds that which was actually requested by Camden, we find no error. Moreover, by the time Camden finally realized the complete plans were not under seal, the trustee had already sold the design plans to another company. Thus, it is doubtful that the court even had the authority to compel production.

Camden also asserts that the court erred in calculating an offset based on testimony offered before Camden learned that the sealed drawings were incomplete. The court's award was based on the testimony of a Camden expert who testified that damage caused by the absence of plans was between $50,000 and $75,000. We find that $50,000 is a reasonable award based upon record evidence of foreseeable damages available at the date the order was issued.

While Camden has clearly been injured by the trustee's failure to provide a complete set of design plans, it could have pursued relief in a number of more effective ways. For example, it could have appealed the court's refusal to reopen the damages

---

[11] The court responded that it could only rule on what was pled, and that it was "not saying that you're not entitled to other drawings. . . . I'm just saying that I'm granting [what was pled]." The court moreover suggested that Camden would have to file a supplemental motion if it wanted access to any other drawings.

10

issue, or it could have filed a supplemental motion to compel production of the missing drawings.  Because Camden's injuries are attributed to their own litigation conduct, we affirm the order granting Camden all the design plans under seal and a $50,000 offset against the MegaShredder purchase price.

III.

We find the agreement at issue required the trustee to provide Camden with a supervising engineer during assembly. Moreover, no error was committed by holding that Camden was entitled to only those design plans, specifications, and drawings that the trustee had filed under seal, and by awarding Camden only $50,000 in offsets for the expenses it incurred as a result of the incomplete design plans.  AFFIRMED IN PART, REVERSED IN PART and remanded for further proceedings.

11