United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 17, 2003**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 02-50954

---

IN THE MATTER OF:

HOMEOWNERS MORTGAGE AND EQUITY, INC.,

Debtor.

JEFFREY W. HURT,

TRUSTEE OF THE LIQUIDATING TRUST OF HOMEOWNERS MORTGAGE & EQUITY, INC.,

Appellant,

VERSUS

FEDERAL NATIONAL MORTGAGE ASSOCIATION
AND HOME SECURITIZATION TRUST 1 (FANNIE MAE); U.S. BANK,

Appellees.

---

Appeal from the United States District Court
for the Western District of Texas
m A-01-CV-660-JN

---

Before JOLLY, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

After unilaterally terminating a contract it entered into with Homeowners Mortgage and Equity, Inc. ("Homeowners"), the Federal National Mortgage Association ("Fannie Mae") sought to enforce a provision of the contract that required Homeowners to repurchase loans that were in breach of the contract's warranty provision. The district court summarily affirmed the bankruptcy court's decision that Fannie Mae was entitled to a claim against Homeowners' bankruptcy estate because Fannie Mae validly asserted that right despite the fact that it had already terminated the contract. Finding no error, we affirm.

I.

Fannie Mae, a congressionally chartered private corporation, purchases mortgage loans from original lenders in a secondary mortgage market. Homeowners is a lender that offers loans under title I of the National Housing Act of 1934, which offers qualified borrowers the chance to receive up to $25,000 for home maintenance and improvement. After expanding into the secondary market for title I loans, Fannie Mae entered into a Mortgage Selling and Servicing Contract ("MSSC") with Homeowners, pursuant to which Fannie Mae ultimately purchased $243 million of Homeowners' title I loans. Homeowners retained the right to continue to earn fees from servicing the loans.

The MSSC does not place any obligation on Fannie Mae to purchase loans. Rather, it serves only to define the relationship between the parties and to create some of the terms and conditions under which Fannie Mae would la-

ter agree to purchase loans. Thereafter, the parties were to enter into a series of contracts, known as Master Purchase Agreements ("MPA's"), each of which created a specific obligation to purchase a discreet amount of loans.

The source of the present litigation is section IV of the MSSC, in which Homeowners agreed that it would not sell loans to Fannie Mae without first making several warranties that collectively established that Homeowners is an authorized lender and that the mortgages it sold to Fannie Mae were valid and enforceable. Fannie Mae requires these warranties before it will buy loans, because the substantial volume of its business makes it impractical to underwrite or review specific loans before agreeing to purchase them. The warranties are Fannie Mae's only assurance that the loans it agrees to buy will be good investments.

The MSSC provides Fannie Mae with various remedies in the event the warranties are breached. Section IV.B. provides that Fannie Mae has the right to require the lender to repurchase a mortgage if any warranty made by the lender is untrue. This provision is non-exclusive, because it provides that Fannie Mae can "also enforce any other available remedy." Section IV.C. states that an additional, non-exclusive remedy is the termination of the contract. Finally, section X provides that responsibilities and liabilities of the lender survive termination of the MSSC.

Fannie Mae terminated the MSSC, claiming a breach of warranty, whereupon Fannie Mae assumed the servicing rights that had been held by Homeowners, drying up Homeowners' principal source of income and forcing it into chapter 11 bankruptcy. The appellant, Jeffrey Hurt, was appointed trustee of the bankruptcy

2

estate. He sued Fannie Mae, alleging three counts of breach of contract, four claims sounding in tort, and three bankruptcy claims for fraudulent transfer, turnover, and equitable subordination. Fannie Mae filed a proof of claim to recover amounts it alleges are due to it pursuant to the warranty, repurchase, and indemnity provisions of the MSSC.

The bankruptcy court held that the trustee was entitled to recover $4,800,000 under the MSSC, but the court also awarded Fannie Mae $21,528,294.50 arising from Homeowners' repurchase obligations. This figure was further offset by credits for the value of Department of Housing and Urban Development insurance and the residual values of the loans, resulting in a net judgment of $13,915,872.50 for Fannie Mae. The district court summarily affirmed.

## II.

The trustee argues that the bankruptcy court erroneously interpreted the MSSC when it held that Fannie Mae has the right to exercise its repurchase rights after it already has terminated the contract. Citing *Denison Mattress Factory v. Spring-Air Co.*, 308 F.2d 403, 413 (5th Cir. 1962), the trustee contends the repurchase right is merely a benefit of the contract that Fannie Mae cannot seek to obtain if it also shirks its obligations under the terminated contract. For support, the trustee also points to section IX of the MSSC, which provides that on termination of the contract, "the entire relationship between the Lender and [Fannie Mae] ends."

We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*, using the same standards that the bankruptcy court and district court applied. *Refinery Holding Co. v. TRMI Holdings, Inc.*

*(In re El Paso Refinery, LP)*, 302 F.3d 343, 348 (5th Cir. 2002); *West v. Balfour Beatty Constr., Inc. (In re Miller),* 290 F.3d 263, 266 n.2 (5th Cir. 2002). The parties agree that we are to apply Texas law. "Interpretation of a contract is a matter of law, as is the determination that a contract is ambiguous, and both are reviewed de novo." *Camden Iron & Metal, Inc. v. Krafsur (In re Newell Indus., Inc.)*, 336 F.3d 446, 448 (5th Cir. 2003). To determine the parties' intent, Texas law requires us to harmonize the complete document and give effect to all its provisions. *Kona Tech. Corp. v. S. Pac. Transp. Co.,* 225 F.3d 595, 610 (5th Cir. 2000).

The trustee's argument is unavailing. When read in its entirety, the MSSC states that the right to require loan repurchase and the right to terminate the contract are remedies for a breach of warranty; that these remedies are not exclusive; and that they survive the termination of the contract.

For the breach of warranty claim to survive termination under section X, the breach of warranty must be a "[r]esponsibility or liabilit[y] of the lender that exist[s] before the termination of the Contract." Texas law reads the term "liability" broadly to include "almost every character of hazard or responsibility, absolute, contingent, or likely."[1] Homeowners was saddled with a contingent liability from the moment it sold non-compliant loans to Fannie Mae. Thereafter, there was the possibility that Fannie Mae would require Homeowners to fulfil its repurchase obligations. The fact that Fannie Mae did not insist on this

---

[1] *Burnett v. Chase Oil & Gas, Inc.*, 700 S.W.2d 737, 742 (Tex. App.SSTyler 1985, no writ); *see also Reconstruction Fin. Corp. v. Gossett*, 111 S.W.2d 1066, 1073-74 (Tex. 1938).

remedy before first exercising its right to a non-exclusive, alternative remedySSthe termination of the contractSSneither extinguishes Fannie Mae's rights to the additional repurchase remedy nor makes Homeowners' breach of warranty any less a liability. Accordingly, the bankruptcy court's interpretation of the MSSC was not erroneous.[2]

The trustee also avers that even if the repurchase right is enforceable, the bankruptcy court erred in awarding damages for this breach of warranty, because there was no evidence that the breach harmed Fannie Mae. This claim is without merit, however, because the MSSC provides Fannie Mae with the right to demand repurchase of any loans that violate the MSSC's warranty provisions, without regard to whether the loans ultimately go into default.

### III.

Next, the trustee raises several challenges to the factual basis for the bankruptcy court's conclusion that Homeowners sold loans that were in breach of its warranties. None of these claims merits reversal.

_____

[2] Homeowners asserts that the interpretation of the contract that we now adopt conflicts with that employed in *Fannie Mae v. FDIC*, 970 F.2d 484 (8th Cir. 1992). We disagree. In that case, the issue was whether a party that had an indemnity obligation while servicing a loan under a contract with an identically-worded section IX was required to continue indemnifying Fannie Mae after it had been terminated as a servicer of the loan. *Id.* at 485. The court held that it was not, because the indemnification obligation arose only during the continuation of the lending agreement. *Id.* at 486-87. In contrast, the repurchase obligation that we recognize today arises under a different section of the contract that creates a remedy for a one-time breach of warranty.

The trustee challenges the bankruptcy court's decision to admit a summary document into evidence, even though it contained hearsay impressions of Fannie Mae employees. We review for abuse of discretion the decision to admit a summary document into evidence. *United States v. Tannehill*, 49 F.3d 1049, 1056 (5th Cir. 1995). The bankruptcy court emphasized its understanding that most of the material in the summary was unreliable, and the court assigned it little weight. Nevertheless, the summary contained some objective statements of fact that the court found useful, so its decision to admit the document was not an abuse of discretion.

Homeowners also reasons that the bankruptcy court erred in finding that it sold "multi-family" loans in amounts that exceeded the maximum amount provided for in the MSSC's warranty provision. The trustee argues that one of the MPA's gave Homeowners a variance to sell loans in a larger amount than was provided for in the MSSC and that this variance applies to loans sold under different MPA's. This is a question of contract interpretation that we review *de novo*. *Newell*, 336 F.3d at 448. The trustee's argument is erroneous as a matter of law, because the MPA's govern only the sale of a few specific loans, and the one containing the variance in question expired before Homeowners sold the non-qualifying loans to Fannie Mae. The bankruptcy court correctly held that this expired MPA did not alter the terms of the warranties applicable to loans sold under different MPA's.

The trustee argues that there is insufficient evidence to find that Homeowners' "Wiltshire Boulevard" loans were sold in breach of any warranty it made to Fannie Mae. This is a question of fact subject to clear error review.

*Concise Oil & Gas P'ship v. La. Intrastate Corp.*, 986 F.2d 1463, 1469 (5th Cir. 1993). The trustee's argument is frivolous, because Homeowners' president acknowledged that these loans were made to non-existent borrowers. As a result, they are unenforceable and in violation of the warranty contained in section IV.A.5. of the MSSC.

IV.

The trustee challenges the bankruptcy court's calculation of future damages as part of the award to Fannie Mae. We review an award of future damages for clear error. *Crawford v. Falcon Drilling Co., Inc.*, 131 F.3d 1120, 1129 (5th Cir. 1997). Under Texas law, a claimant must show, with a reasonable degree of probability, (1) that it will incur future damages and (2) the amount of such damages. *MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 654-55 (Tex. 1999).

The bankruptcy court awarded future damages only for those loans that it found were likely to be both in breach of a warranty and in default. To make this calculation, the bankruptcy court relied on a statistical analysis that was performed by Homeowners' expert. Homeowners has failed to show that its expert's calculations are clearly erroneous. Instead, its strongest argument is that the expert classified only 1.87% of the loans as highly likely to breach a warranty, while the bankruptcy court calculated damages on the basis of the study's conclusion that 24.7% of the loans deviated from the relevant standards and were likely to breach.

It was not error for the bankruptcy court to rely on this larger figure, because Fannie Mae was required only to prove a reasonable probability that it would incur future damages

in the amount claimed. *MCI*, 995 S.W.2d at 654-55. Because the 24.7% figure adopted by the bankruptcy court included all the loans that were likely to be breached, it was not clearly erroneous for that court to conclude that this measure best estimated Fannie Mae's future damages.

V.

Homeowners contends that the bankruptcy court abused its discretion in declining to award it attorney's fees. Homeowners correctly points out that it need not be a net prevailing party to recover attorney's fees under Texas law. *See Gereb v. Smith-Jaye*, 70 S.W.3d 272, 273 (Tex. App.SSSan Antonio 2002, no writ). Nevertheless, a decision to award fees is within the sound discretion of the bankruptcy court. FED. R. BANKR. P. 7054. The district court concluded that both parties had pursued their claims in good faith and that it was difficult to determine which was the "prevailing" party. In light of the fact that Homeowners lost a net judgment of nearly $14 million dollars, it was no abuse of discretion to decline to award fees.

The judgment of the district court, affirming the judgment of the bankruptcy court, is AFFIRMED.

5