PER CURIAM: *
While in bankruptcy, Debtor-Appellant Valence Technology, Inc. (“Valence”) sought to retain Appellees KPMG Corporate Finance, LLC (“KPMG”) and Roth Capital Partners, LLC (“Roth”) to arrange for a potential private placement of Valence’s equity. The bankruptcy court subsequently approved Valence’s employment of KPMG and Roth pursuant to Valence’s engagement agreement with each Appel-lee. See 11 U.S.C. §§ 327(a), 328(a).
Section 3 of the engagement agreements detailed the parties’ fee arrangement. Under this section, Valence “agree[d] to pay,” an “Engagement Fee,” a “Retainer Fee,” and:
[a]n additional fee (the “Success Fee”) in an amount equal to 2.5% of the Private Placement Value (as defined below) less the amount of the previously paid Engagement Fee and Retainer Fee, but in no event less than a minimum success fee of $500,000 (the “Minimum Success Fee”).
The following sentence defines “Private Placement Value” to mean:
the aggregate amount of cash and the fair market value (on the date of closing) of any other consideration received by the Company in any Private Placement, *440 excluding any consideration received by the Company’s creditors in satisfaction of claims or debts existing, on the date hereof.
The next two sentences provide further conditions relating to the Success Fee:
Any consideration received from Berg & Berg, Carl Berg or any other entity affiliated with Carl Berg, Johnson Controls, SAIF, Enertech Capital, Via Motors or any of their respective affiliates (collectively, the “Identified Parties”) will be subject to a Success Fee of 1.25% (and not 2.5%), but still subject to the Minimum Success Fee.
The Success Fee shall be payable with respect to the Private Placement upon consummation of such Private Placement.
The sole issue on appeal is the amount of the additional fee, i.e., the Success Fee, Valence owes based on one of the Identified Parties, Berg & Berg, agreeing to convert $60 million of its prepetition debt to equity in a reorganized Valence.[1] The bankruptcy court awarded KPMG and Roth each $595,000, which amounted' to 1.25% of the $50 million debt-to-equity conversion less the $30,000 engagement and retainer fees that Valence had already paid. The district court affirmed the fee awards, and Valence appealed.
“We review the bankruptcy court’s findings of fact for clear error and its conclusions of law de novo, using the same standards that the bankruptcy court and district court applied.” Hurt v. Fed. Nat’l Mortg. Ass’n & Home Securitization Tr. 1 (In re Homeowners Mortg. & Equity, Inc.), 354 F.3d 372, 375 (5th Cir.2003). The bankruptcy court held that the engagement agreements were unambiguous, which is a question of law that we review de novo. See McDermott, Inc. v. Clyde Iron, 979 F.2d 1068, 1072 (5th Cir.1992), rev’d in part on other grounds sub nom. McDermott, Inc. v. AmClyde, 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994).
In its ruling, the bankruptcy court explained that Section 3 initially “defines [Pjrivate [Placement [Vjalue generally” to exclude “any consideration received by [Valence’s] creditors in satisfaction of [existing] debts.” However, the next sentence “specifically carve[s] out Berg & Berg[, a creditor,] as one of the number of parties to be treated differently.” The court held that this latter sentence — which is the “more specific sentence” vis-á-vis the preceding definition of Private Placement Value — “applies to Berg & Berg’s exchange of debt for equity because it specifically carves out and addresses any consideration received from Berg & Berg.” It also stated that this reading aligns with the engagement agreements’ “overall purpose for employing [KPMG and Roth] to procure equity or equity-linked financing.” It concluded that the agreements entitled KPMG and Roth to a Success Fee of 1.25% of “that $50 million exchange under the terms of the engagement [agreements] that specifically addressed consideration received from Berg & Berg.”
We agree with the bankruptcy court’s reasoning, which comports with the interpretive principle that a later, specific sentence in a contract controls over an earlier, general sentence. See John Hancock Mut. Life Ins. v. Carolina Power & Light Co., 717 F.2d 664, 669 n. 8 (2d Cir.1983) (applying New York law). KPMG and Roth are each entitled to the fee of $595,-000 — that is, 1.25% of the $50 million value of Berg & Berg’s debt-to-equity conversion *441 minus the previously paid fees totaling $30,000.
AFFIRMED.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

, The parties do not dispute that Berg & Berg’s debt-to-equity conversion qualified as a Private Placement under the engagement agreements.