# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 21, 2010

No. 08-11052

Lyle W. Cayce
Clerk

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE CO.,

Plaintiff-Appellant,

v.

RENTECH STEEL LLC; PRESTON TEEL; LESA CROSSWHITE;
JENNINGS TEEL,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas (Abilene Division)

Before KING, BARKSDALE, and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

This case addresses whether an insurance policy that excludes coverage for an "obligation" incurred under "any workers' compensation law" bars coverage for a judgment that an employee recovers in a negligence action against a Texas employer that does not subscribe to the Texas workers' compensation system. Because the Texas Workers' Compensation Act ("TWCA") imposes no obligation on a nonsubscriber to compensate an employee for injuries sustained due to the employer's own negligence, we find that the exclusion is not applicable. Accordingly, we AFFIRM the district court's summary judgment in favor of defendants-appellees.

No. 08-11052

I.

Plaintiff-Appellant American International Specialty Lines Insurance Co. ("AISLIC") appeals from the district court's summary judgment in favor of defendants, holding that AISLIC's umbrella insurance policy ("the AISLIC policy"), issued to Rentech Boiler Systems, Inc., covered the negligence claims that Preston Teel, Lesa Crosswhite, and Jennings Teel ("the Teels") asserted against Rentech Steel, L.L.C. in the underlying litigation and the resulting judgment. Rentech Steel, Rentech Boiler Systems, Inc., and Renz Family Partnership, Ltd. are entities under the control of or owned by a common owner/entity. Rentech Steel, a nonsubscriber to the Texas workers' compensation insurance system, maintained both a primary indemnity policy, which is not implicated in this case, and the AISLIC Policy. Rentech Steel shared the AISLIC Policy with Rentech Boiler Systems, a subscriber to the workers' compensation system, but they maintained separate primary policies due to their differing statuses in relation to the workers' compensation system.

The underlying litigation commenced when sixteen-year-old Preston Teel sustained severe injuries while working at Rentech Steel's manufacturing facility in Abilene, Texas. Following the incident, the Teels sued Rentech Steel in state court for gross negligence, negligence, and negligence per se. Lexington Insurance Company, Rentech Steel's primary insurer, initially defended Rentech Steel in the litigation. But after Lexington Insurance denied further coverage, AISLIC assumed Rentech Steel's defense as the umbrella insurer. A few weeks before trial was to begin, AISLIC sought a declaratory judgment that it had no obligation to defend or indemnify Rentech Steel in the lawsuit. On the first day of trial, Rentech Steel entered Chapter 7 bankruptcy. According to Rentech

No. 08-11052

Steel, the bankruptcy was necessary because AISLIC would not pay for the suit. The bankruptcy court, however, lifted the stay and permitted the case to proceed to trial on the condition that any recovery would be limited to the proceeds of the AISLIC insurance policy.

The jury found for the Teels on their negligence and negligence per se claims, but it did not find gross negligence on the part of Rentech Steel. The court then entered a judgment against Rentech Steel for $12,470,000 in actual damages, which was reduced to $10,570,000 after applying a settlement credit. Rentech Steel has appealed the judgment, and AISLIC has continued to defend Rentech Steel under a reservation of rights during the appeal. As a consequence of the state-court judgment, the Teels became proper claimants to Rentech Steel's insurance policy.

Shortly after the state court entered its judgment, AISLIC filed a declaratory judgment action in federal court seeking to establish that it had no duty to either defend Rentech Steel in the underlying state-court lawsuit or to indemnify Rentech Steel for the judgment because the AISLIC policy's "Various Laws" exclusion excluded coverage for any "obligation of the Insured under . . . any workers' compensation, disability benefits, or unemployment compensation law, or any similar law." AISLIC moved for summary judgment, arguing that a negligence claim filed against a nonsubscribing employer is an obligation arising under the TWCA, not state common law, so the Teels' judgment against Rentech Steel was necessarily an "obligation" under Texas's workers' compensation law—an obligation explicitly excluded from coverage under the "Various Laws" exclusion. The Teels and Rentech Steel opposed AISLIC's motion.

No. 08-11052

The district court denied AISLIC's summary-judgment motion, holding that the judgment against Rentech Steel did not fall within the Policy's "Various Laws" exclusion.    The order explained that, although the TWCA deprives appellees of the right to assert a common-law negligence or negligence per se claim against a subscribing employer, the Act imposed no "obligation" on a nonsubscribing employer to compensate an employee for injuries resulting from the employer's negligence, but merely limited an employer's defenses against an employee's common-law claims.  Alternatively, the court held that, because the "Various Laws" exclusion was ambiguous, Texas law required that the exclusion be interpreted against AISLIC and in favor of coverage where appellees' interpretation of the exclusion was reasonable.

Following the district court's denial of AISLIC's motion for summary judgment, appellees filed for summary judgment on the ground that the AISLIC policy's "Various Laws" exclusion did not bar coverage of the judgment against Rentech Steel, which the district court granted.  This appeal followed.

II.

We review a district court's summary judgment *de novo*, applying the same legal standards that the district court applied, viewing the evidence in the light most favorable to the nonmoving party.  *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 259–60 (5th Cir. 2003).   We affirm "only if there is no genuine issue of material fact and one party is entitled to prevail as a matter of law."  *Cedyco Corp. v. PetroQuest Energy, LLC,* 497 F.3d 485, 488 (5th Cir. 2007) (citations omitted).  Where, as here, parties have filed cross-motions for summary judgment, each motion must be considered separately because each movant bears the burden of showing that no genuine issue of

No. 08-11052

material fact exists and that it is entitled to a judgment as a matter of law. *Shaw Constructors v. ICF Kaiser Engr's, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

### III.

At issue in this case is whether an employee's negligence action against an employer that does not subscribe to the Texas workers' compensation system is an "obligation" under the TWCA, such that it is excluded under the AISLIC Policy's "Various Laws" exclusion. The AISLIC Policy's "Various Laws" exclusion provides:

> This insurance does not apply to any obligation of the Insured under any of the following:
>
> 1.   the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), or any amendment or revision thereto, or any similar law; or
>
> 2.   any workers' compensation, disability benefits or unemployment compensation law, or any similar law.

Because Texas law governs this claim, we employ the principles of Texas contract construction in interpreting the "Various Laws" exclusion. Texas law provides that insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). Limiting our inquiry to the four corners of the underlying complaint and the four corners of the insurance policy, we interpret the contract to discern the intention of the parties from the language expressed in the policy. *See Amerisure Ins. Co. v. Navigators Ins.*

5

No. 08-11052

*Co.*, 611 F.3d 299, 309 (5th Cir. 2010). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citations omitted). Where, as here, the disputed provision is an exclusion, the insurer bears the burden of establishing that the exclusion applies. *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

Whether a contract is ambiguous is a question of law. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). An ambiguity does not arise simply because the parties present conflicting interpretations; it "exists only if the contractual language is susceptible to two or more reasonable interpretations." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003) (citation omitted). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous," and the court construes it as a matter of law without admitting evidence for the purpose of creating an ambiguity. *Id*.; *see Univ. C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951). But if the policy language is ambiguous, we construe it "strictly against the insurer and liberally in favor of the insured," *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987), and an "even more stringent construction is required" where the ambiguity pertains to an "exception or limitation on [the insured's] liability under the policy," *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). Consequently, we must adopt the "construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more

6

No. 08-11052

accurate reflection of the parties' intent." *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977).

Employing these principles, we find no ambiguity in the language of the "Various Laws" exclusion. The exclusion plainly excludes from coverage only those legal obligations imposed by "any workers' compensation . . . law." This provision is straightforward. If Texas's workers' compensation law imposes a duty upon Rentech Steel to compensate the Teels for the injuries Preston Teel incurred due to Rentech Steel's negligence, the exclusion applies and bars coverage. Hence, the only question before the court concerns the proper interpretation of Texas law: does the TWCA obligate a nonsubscribing employer to compensate an employee for injuries sustained as a result of the employer's own negligence, or is such compensation a duty under Texas common law?[1]

## IV.

AISLIC and appellees disagree on two fundamental aspects of Texas law: (1) whether an employee's negligence claim against a nonsubscribing employer arises under the TWCA or common law, and (2) if it arises under the TWCA, whether the TWCA imposes an "obligation" upon a nonsubscriber to compensate an employee for injuries caused by its own negligence. AISLIC contends that the provision of the TWCA addressing negligence actions against nonsubscribers, codified at section 406.033 of the Texas Labor Code, wholly supplanted the Texas common-law claim with a statutory claim. According to AISLIC, because the TWCA creates the cause of action under which the Teels sued Rentech Steel for

---

[1] Although AISLIC challenges both its duties to indemnify and defend Rentech Steel, which are separate duties creating separate causes of action under Texas law, *see Amerisure*, 611 F.3d at 309–10, the parties agree that the applicability of the "Various Laws" exclusion is determinative of whether AISLIC owes both duties.

7

No. 08-11052

negligence, the TWCA necessarily imposes an obligation on Rentech Steel to pay the Teels' judgment.  AISLIC premises its theory on the fact that section 406.033 deprives nonsubscribing employers of certain defenses available at common law and sets out an employee's burden of proof in negligence cases.  Tex. Labor Code § 406.033 (b), (c).

Appellees contend that AISLIC can prove neither that the TWCA creates the cause of action for negligence against a nonsubscriber, nor that section 406.033 imposes any "obligation" on a nonsubscriber to pay a judgment to an employee for injuries caused by negligence.  According to appellees, rather than displacing the common law, section 406.033 "simply leaves the common law intact with one modification: as a carrot-and-stick incentive to participate in the compensation program, the TWCA deprives nonsubscribers of some traditional common-law defenses."  But regardless of what law creates the cause of action, appellees argue that section 406.033 is devoid of any language creating an "obligation" for nonsubscribing employers to compensate employees for accidents resulting from negligence, so the exclusion does not apply.

Where, as here, the proper resolution of the case turns on the interpretation of Texas law, we "are bound to apply [Texas] law as interpreted by the state's highest court." *Barfield v. Madison Cnty.*, *Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000).  Because the Texas Supreme Court has never ruled on whether the Texas Workers' Compensation Act "obligates" a nonsubscribing employer to compensate an employee for injuries sustained due to employer negligence, we must make an "*Erie* guess" as to how the Texas Supreme Court would rule upon the issue based on

> (1) decisions of the [Texas] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Texas] Supreme Court

8

No. 08-11052

decisions on related issues, (3) dicta by the [Texas] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Texas] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

*Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006) (quoting *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998)).

Turning first to the text of section 406.033, nothing in the text indicates that the Texas Legislature intended to impose a legal "obligation" on a nonsubscriber to compensate an injured employee. The statute simply specifies that, "[i]n an action against an employer who does not have workers' compensation insurance coverage to recover damages for personal injuries or death sustained by an employee in the course and scope of employment," the defendant employer is deprived of certain defenses available at common law, though other defenses remain available. § 406.033(a), (b). It also clarifies that the common-law negligence standard continues to apply: "the plaintiff must prove negligence of the employer or of an agent or servant of the employer acting within the general scope of an agent's or servant's employment." § 406.033(c).

Although we believe that this statute, on its face, does no more than modify the defenses available at common law, and does not create a cause of action that usurps the common-law cause of action, we "are emphatically not permitted to do merely what *we* think best; we must do that which we think the [Texas] Supreme Court would deem best." *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir. 1986) (en banc). Thus, we consider the

9

No. 08-11052

relevant authorities to determine how the Texas Supreme Court would interpret section 406.033.

A. Texas Cases

In making our *Erie* guess, we look first to those Texas Supreme Court cases that, while not deciding the issue, provide guidance as to how the Texas Supreme Court would decide the question before us. Our preeminent *Erie*-guess authorities, language and decisions from the Texas Supreme Court, suggest that the court would find that a negligence claim against a nonsubscriber is a common-law claim, and that section 406.033 imposes no "obligation" upon Rentech Steel to pay the Teels' judgment. The Texas Supreme Court in *Kroger Company v. Keng*, 23 S.W.3d 347, 349 (Tex. 2009), indicated in dicta that a negligence claim against a non-subscriber is modified by the TWCA, but remains a claim at common law. In that case, the court addressed whether Chapter 33 of the Texas Civil Practice and Remedies Code required the district court to submit a comparative-responsibility question to the jury in a negligence action against a nonsubscriber, or alternatively, whether section 406.033 prevented the jury from considering comparative responsibility. The Texas Supreme Court explained in dicta that the TWCA

> allow[s] injured workers, whose employers subscribed to workers' compensation insurance, to recover without establishing the employer's fault and without regard to the employee's negligence. In exchange, the employees received a lower, but more certain, recovery than would have been possible under the common law. Employers were, however, allowed to opt out of the system, *resulting in their employees retaining their common-law rights*.[2]

---

[2] The Texas Supreme Court went on to explain that the purpose of enacting section 406.033 was to discourage employers from choosing to opt out by depriving them of certain traditional common-law defenses to an employee's negligence action. *Kroger*, 23 S.W.3d at

10

No. 08-11052

*Id*. at 349–50 (emphasis added). This suggests that the right to bring a claim against a nonsubscriber for negligence remains what it has always been—a right arising under common law.

AISLIC, however, argues that this case supports exactly the opposite conclusion: that such a claim is an obligation arising under the TWCA because the TWCA "governs" the negligence cause of action. AISLIC reads *Kroger* as "unequivocally stat[ing] that the [TWCA] governs an employee's personal-injury claim against a nonsubscribing employer," as the Texas Supreme Court there explained that

> Labor Code § 406.033, which is part of the Workers' Compensation Act, governs an employee's personal-injury action against his or her employer, when the employer is a nonsubscriber under the Act.
> . . . .
> In enacting section 406.033 and its predecessors, the Legislature intended to delineate explicitly the structure of an employee's personal-injury action against his or her nonsubscribing employer. Section 406.033(a) prescribes the defenses that are unavailable to a nonsubscriber; section 406.033(c) dictates the defenses that implicate the employee's conduct and on which an employer may rely; and section 406.033(d) provides the employee's burden of proof . . . .

23 S.W.3d 347, 349–51 (Tex. 2000). Thus, according to AISLIC, because the TWCA governs an employee's negligence claim against a nonsubscriber, it also provides an obligation for the nonsubscriber to compensate the injured employee.

Not so. We agree that this language in *Kroger* indicates that a negligence claim against a nonsubscriber must proceed within the parameters delineated in section 406.033. But it does not follow that simply by virtue of governing the

---

350.

11

claim, the TWCA also "obligates" Rentech Steel to pay the Teels' judgment. Many common-law claims are "governed" by statutes of limitations, but those statutes neither give rise to the cause of action they govern, nor do they obligate any party to pay a judgment arising from a governed claim. *See* Texas Civ. Prac. & Rem. Code § 16.003(a), (b) (providing a two-year statute of limitations for such common-law claims as trespass, injury to the estate or property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, and forcible entry and detainer); *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467 (5th Cir. 1999) (citing section 16.003(a) for the premise that "a two-year statute of limitations *governs* personal injury actions." (emphasis added)).    Because it is clear that AISLIC's chain of logical assumptions is missing a key link, we must conclude that *Kroger* provides no support for AISLIC's theory.

Moreover, in *Kroger*, the Texas Supreme Court explicitly declined to adopt the appellate court's reasoning, favorable to AISLIC, that a suit against a nonsubscriber is "'an action to collect workers' compensation benefits under the workers compensation laws of this state.'" *See Kroger*, 23 S.W.3d at 352 (quoting Texas Civ. Prac. & Rem. Code § 33.002(c)(1)).  The court reserved that question for another day, and instead affirmed the appellate court's decision that no comparative-responsibility jury instruction was required on the ground that no such jury instruction was possible because section 406.033 precludes a finding of comparative responsibility. *Id.* Thus, we do not read *Kroger* to suggest that the TWCA imposes an obligation on Rentech Steel to compensate the Teels for Preston's injuries.

No. 08-11052

Further, the Texas Supreme Court's decision in *Fairfield Insurance Co. v. Stephens Martin Paving, L.P.,* demonstrates that, even where the TWCA sets certain parameters on an employee's claim against a nonsubscriber, it does not necessarily transform the claim into an obligation under the TWCA. 246 S.W.3d 653, 659 (Tex. 2008). In *Fairfield*, the Texas Supreme Court held that the standard-form employers' liability policy—the same policy AISLIC issued to Rentech Steel, containing the very same "Various Laws" exclusion—did not exclude coverage for claims of gross negligence against nonsubscribers. *See id.* This holding is significant because Texas Labor Code section 408.001(b), the provision of the TWCA governing gross-negligence claims against nonsubscribers, specifies the employee's burden of proof in that action: the employee must prove that the employee's "death was caused by an intentional act or omission of the employer or by the employer's gross negligence."[3]  Tex. Lab. Code § 408.001(b). *Fairfield* thus belies AISLIC's contention that section 406.033 subsumed the common law because it "specif[ies] the employee's burden of proof and the defenses available to the employer." Where the TWCA provides the employee's burden of proof for both gross-negligence and negligence claims, and the former are unquestionably covered by the insurance policy, the statute's provision of the employee's burden of proof cannot provide the basis for a contrary result here.

Though the decisions and dicta of the Texas Supreme Court weigh more heavily in our *Erie* analysis, we also consider those decisions of Texas appellate courts in determining how the Texas Supreme Court would rule on this issue.

---

[3] Further, section 408.001 goes on to define "gross negligence" as "the meaning assigned by Section 41.001, Civil Practices and Remedies Code." Tex. Lab. Code § 408.001(c).

No. 08-11052

AISLIC invites us to follow *Robertson v. Home State County Mutual Insurance Company*, —S.W.3d—, 2010 WL 2813488 (Tex. App.—Ft. Worth, 2010, no pet.), which held that the employee's judgment for damages against his nonsubscribing employer was an "obligation" under workers' compensation law, excluded from coverage by the "Various Laws" exclusion in his employer's liability policy.[4]  We decline this invitation, as *Robertson* is inconsistent with both the relevant Texas Supreme Court caselaw and the plain reading of section 406.033.  *See Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) (finding that, where authorities were split, the Texas Supreme Court would adopt the view that was most consistent with the "plain reading" of the statute).

We consider *Robertson* to be unpersuasive because it conflates "governs" with "obligates," and because it fails to account for the Texas Supreme Court's decision in *Fairfield*.  *See Robertson*, 2010 WL 2813488, at *5.  The *Robertson* court grounded its holding that no coverage existed on the statute's provision of the plaintiff's burden of proof, *id*. at *7.  This conflicts, however, with *Fairfield*'s holding that the standard employers' liability policy covered claims for gross negligence, though the TWCA sets the standard of proof for those claims as well, *See Fairfield*, 246 S.W.3d at 657.  We are convinced by the plain language of section 406.033 and by *Fairfield* that the Texas Supreme Court would not follow *Robertson*, so we do not defer to it.  *Mem'l Hermann Healthcare Sys., Inc., v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (explaining that we need not defer to an intermediate state appellate court decision where we are "convinced by other persuasive data that the highest court of the state

---

[4] *But see In re Autotainment Partners,* 183 S.W.3d 532, 537 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that a negligence claim against a nonsubscriber for workers' compensation benefits does not arise under the TWCA).

No. 08-11052

would decide otherwise."); *see also Warfield*, 436 F.3d at 558 (holding that the Texas Supreme Court would follow those decisions that were most consistent with the "plain reading" of the statute).

B.  Decisions From Other Courts

Although Texas cases provide greater guidance for our *Erie* analysis, we may likewise "consider, among other sources, treatises, decisions from other jurisdictions, and the 'majority rule.'" *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (citation omitted); *see also Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 311 (5th Cir. 2010).  Here, we have the benefit of a number of federal cases[5] interpreting the TWCA, and we consider these cases in determining whether the Texas Supreme Court would conclude that section 406.033 imposes an obligation on Rentech Steel to pay the Teels' judgment.

---

[5] We generally consider decisions from other states to the extent they are relevant, but the decisions AISLIC submits are largely inapposite because, unlike most other states, Texas grants employers the right to choose whether to participate in the workers' compensation system.  In AISLIC's cases, the courts considered how nonsubscribers were acting illegally under state law, but Rentech Steel is not similarly situated. *See Indian Harbor Ins. Co. v. Williams*, 998 So. 2d 677, 678–79 (Fla. Ct. App. 2009); *Weger v. United Fire & Cas. Co.*, 796 P.2d 72, 74 (Colo. Ct. App. 1990); *Hanover Ins. Co. v. Ramsey*, 539 N.E.2d 537, 538 (Mass. 1989); *Florida Ins. Guar. Ass'n v. Revoredo*, 698 So. 2d 890, 892–93 (Fla. Ct. App. 1997); *Tri-State Constr., Inc. v. Columbia Cas. Co.*, 692 P.2d 899, 903 (Wash. App. 1984); *cf. Liberty Mut. Ins. Co. v. United Nat'l Ins. Co.*, 731 P.2d 167, 168–70 (Haw. 1987) (addressing a different issue).

In states where employers are compelled to participate in the workers' compensation system, there is a stronger argument that employers who fail to participate in the mandatory system are nevertheless "obligat[ed]" by law to compensate injured employees. *See* 21 Eric Mills Holmes & Mark S. Rhodes, Holmes' Appleman on Insurance 2d, § 132.5 (Lexis Nexis ed. 2002) ("The [policy] exclusion excludes 'any obligation' of the insured under a workers' compensation, disability benefits, or unemployment compensation, or any similar law. Including the word 'obligation' means that no coverage applies when (1) an insured has statutory coverage and it applies to a loss or (2) an insured should have obtained the statutory protection that applies to a loss.").

15

No. 08-11052

We begin this analysis by considering *Middleton v. Texas P&L Co.*, a Supreme Court decision examining the TWCA only a few years following its 1913 enactment. 249 U.S. 152 (1919). The TWCA withstood constitutional challenge in the Texas Supreme Court in 1916,[6] but with United States Supreme Court review imminent, the Texas Legislature amended the Act while the appeal was pending to allow workers to forego workers' compensation remedies and thereby retain their common-law rights of action. *See Ferguson v. Hosp. Corp. Int'l*, 769 F.2d 268, 271 (5th Cir. 1985). In 1919, the Supreme Court affirmed the Texas Supreme Court and held that the statute was constitutional. *Middleton*, 249 U.S. at 155. In describing the Act, the Court explained that the TWCA shielded employers from common-law suits, but "[e]mployers who do not become subscribers are subject *as before* to suits for damages based on negligence." *Id*. (emphasis added). Negligence suits preceding the enactment of the TWCA were unquestionably suits under common law. Therefore, the Supreme Court's statement leaves little doubt that it interpreted the TWCA as not fundamentally changing the characterization of common-law negligence claims against nonsubscribers.

We are also guided by those federal decisions that have considered the question whether an action against a nonsubscriber arises under common law or the TWCA. Rentech Steel argues that we should follow *Pyle v. Beverly Enters.-Tex.*, 826 F. Supp. 206, 209 (N.D. Tex. 1993), holding that negligence

---

[6] *Middleton v. Texas P. & L. Co.*, 185 S.W. 556, 561-62 (1916) (rejecting an employee's challenge that the statute's requirement that he accept compensation under his employer's compensation policy in lieu of common-law damages constituted a deprivation of property without due process in violation of the Fourteenth Amendment).

No. 08-11052

claims against nonsubscribers exist independently of the TWCA.[7]  In that well-reasoned opinion, Judge Fitzwater considered whether the plaintiff's negligence suit against her nonsubscribing employer arose under the TWCA, such that it was not preempted by ERISA.  The court held that they were not so preempted because the plaintiff's

> state court petition does not seek recovery pursuant to the TWCA. It clearly alleges common law claims of negligence, intentional infliction of emotional distress and breach of duty of good faith and fair dealing. These are not causes of action that are created by the TWCA; they exist independently. Moreover, the fact that the TWCA deprives employers of certain defenses to negligence claims does not mean that claims by employees against nonsubscribing employers are brought pursuant to the TWCA. *See Eurine v. Wyatt Cafeterias, Inc.*, 1991 WL 207468 at *2 (N.D. Tex. Aug. 21, 1991) (Sanders, C.J.) ("A cause of action does not arise under workers' compensation laws merely because the workers' compensation statute deprives the defendant of certain defenses to the cause of action.").

*Id.*

This approach, we believe, is consistent with the Texas Supreme Court's approach in *Kroger v. Keng*, 23 S.W.3d 347 (Tex. 2000), and with the history of the TWCA, *see Nunez*, 771 F. Supp. at 167–68 ("When the Texas Legislature put a workers' compensation law into effect in 1917 it, for all practical purposes, abolished the right of an employee to bring a common-law action against an employer having workers' compensation insurance coverage.  However, the Legislature preserved the common law right of action for the employees of an

---

[7] *See also Nunez v. Wyatt Cafeterias, Inc.*, 771 F. Supp.165, 167–68 (N.D. Tex. 1991) (holding that by bringing a cause of action against his nonsubscribing employer, the plaintiff had "but exercised his common law rights, as those rights have been enhanced by the workers' compensation laws of Texas").

employer who elected not to carry workers' compensation insurance, and enhanced those rights by a statutory provision that prevented an employer in such an action from asserting defenses that theretofore had been available to employers.").

AISLIC, however, contends that we must consider those district-court decisions holding that claims against nonsubscribers are not removable to federal court under 28 U.S.C. § 1445(c), the federal statute addressing "nonremovable actions," because such claims "arise" under the TWCA. *See Figueroa v. Healthmark Partners*, 125 F. Supp. 2d 209, 210 (S.D. Tex. 2000); *see also Smith v. Tubal-Cain Indus., Inc.*, 196 F. Supp. 2d 421, 423 (E.D. Tex. 2001); *Dean v. Tex. Steel Co.*, 837 F. Supp. 212, 214 (N.D. Tex. 1993). *But see Eurine v. Wyatt Cafeterias, Inc.*, No. 3-91-0408-H, 1991 WL 207468, at *2 (N.D. Tex. Aug. 21, 1991) (unpublished) (holding that, for the purposes of section 1445(c), a negligence action against a nonsubscriber is a common-law claim that does not arise out of the TWCA). We find these cases to be of limited value because section 1445(c) does not require the court to determine whether the TWCA imposes an "obligation" on a nonsubscriber to pay a judgment to an employee injured as a result of the employer's negligence. It provides only that "a civil action in any State court arising under the workmen's compensation laws of such state may not be removed to any district court of the United States."

Further, even if we assume arguendo that a claim that "arises under" the TWCA becomes an "obligation" under that law, the section 1445(c) cases nevertheless remain an imperfect litmus test for how the Texas Supreme Court would resolve the case before us. This is because of the deference courts afford to the congressional intent behind the removal statute, which is not applicable

here. As the district court explained in *Figueroa*, "Section 1445(c) denotes an effort by Congress to restrict the district courts' diversity jurisdiction in order to relieve the collectively overburdened docket of the federal courts. Courts have therefore construed section 1445(c) broadly in order to further this purpose." *Figueroa*, 125 F. Supp 2d. at 211 (internal citations omitted). This broad construction was also apparent in *Smith*, where the court found that a negligence claim "aro[se] under" the TWCA simply because "[n]egligence actions against nonsubscribing employers are expressly contemplated by Texas workers' compensation law; indeed, several common-law defenses have been eliminated by statute." *Smith*, 196 F. Supp. 2d at 423 (citation omitted). We do not comment on whether the TWCA's mere "contemplat[ion]" of a cause of action provides sufficient justification to deny removal under section 1445(c), but it is no proof at all that the TWCA actually "obligate[s]" a nonsubscriber to compensate an employee for negligence-induced injury.

Likewise, *Illinois National Insurance Co. v. Hagendorf Construction Co.*, 337 F. Supp. 2d 902 (W.D. Tex. 2004), is similarly unpersuasive. In that case, the court held that a policy exclusion, similar to the one considered here, excluded coverage for an employee's negligence claim against a nonsubscriber because the claim arose under the TWCA.[8] *See id.* at 905. We are disinclined to follow this decision for four reasons. First, though the Texas appellate court in *Kroger* followed the reasoning that the federal district court would later apply in *Hagendorf*, the Texas Supreme Court expressly declined to adopt that reasoning, and decided the case on other grounds. *Kroger v. Keng*, 23 S.W.3d

---

[8] The exclusion in *Hagendorf* excluded "[a]ny obligation for which the insured or the insured's insurer may be held liable under any workers compensation, disability benefits or unemployment compensation law or any similar law." *Hagendorf*, 337 F. Supp. 2d at 904.

No. 08-11052

347 (Tex. 2000). This inspires little confidence that the court would opt to follow that decision in this instance. Second, *Hagendorf*'s holding is grounded on *Figueroa*, *Smith*, and *Dean*—decisions that were decided using a broad construction of the term "arising under," a construction that we do not apply here. *Illinois Nat'l*, 337 F. Supp. 2d at 905 (citing *Figueroa*,125 F. Supp. 2d 209; *Smith*, 196 F. Supp. 2d 421; *Dean*, 837 F. Supp. 212). Third, just as in the removal cases, *Hagendorf* held that the exclusion applied because the negligence claims were "commenced pursuant" to the TWCA, but this reasoning does not hold water. The text of the exclusion does not purport to exclude claims "commenced pursuant" to any workers' compensation law. The language required the court to determine whether the TWCA actually imposed an obligation on the nonsubscriber to compensate an employer for injuries caused by negligence. The court did not do so.[9]

Finally, we find *Hagendorf* unreliable because the three decisions upon which the court premised its holding—*Figueroa*, *Smith*, and *Dean*—derive their respective holdings, at least in part, from a misreading of *Foust v. City Insurance Co*, 704 F. Supp. 752 (W.D. Tex. 1989) (Gee, J., sitting by designation). These courts interpreted *Foust*'s language—that employers "depart the general common-law tort system" upon hiring workers regardless of whether they choose to subscribe to the workers' compensation system—as implying that the common-law claims had been extinguished. *Id.* at 753; *see also Figueroa*, 125 F. Supp. 2d at 211 (quoting *Foust*, 704 F. Supp. at 753); *Smith*, 196 F. Supp. 2d at 423 (same); *Dean*, 837 F. Supp. at 214 (same). This interpretation conflicts with

---

[9] For these same reasons, we are not persuaded by *Markel Insurance Company, Inc. v. Spirit of Texas Cheer & Gymnastics*, No. 4:08-CV-758-Y, 2010 WL 3283051 (N.D. Tex. Aug. 19, 2010), which followed *Hagendorf*. *See id.* at *6.

No. 08-11052

*Foust*'s language just sentences later: depending on whether an employer subscribed to the workers' compensation system, the TWCA either "admitted [the employer] to the worker's compensation system or removed its defenses and *relegated it to Texas common law*, shorn of [its] defenses." *Foust*, 704 F. Supp. at 753 (emphasis added). Accordingly, we hold that a negligence claim against a nonsubscriber is not an "obligation" imposed by the TWCA.

V.

Alternatively, assuming *arguendo* that the "Various Laws" exclusion is ambiguous, summary judgment for appellees would still be proper if their interpretation of the exclusion is reasonable.[10] *See Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 309 (5th Cir. 2010) (explaining that we must adopt the "interpretation of the exclusionary clause urged by the insured if it is 'not itself unreasonable,' even if the insurer's interpretation seems 'more reasonable or a more accurate reflection of the parties' intent.'" (citation omitted)). The district court stated in its alternative holding that the phrase "any obligation . . . under any workers' compensation . . . law" could be

---

[10] We reject AISLIC's argument that the district court was prohibited from finding ambiguity *sua sponte,* as we have previously held that "[t]he interpretation of the contract and determination of ambiguity, however, is a matter of law, and the court 'may conclude that a contract is ambiguous even in the absence of such a pleading by either party.'" *In re Newell Indus., Inc.*, 336 F.3d 446, 449 n.5 (5th Cir. 2003) (quoting *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993)). As this court has observed, this scenario rarely presents itself. *Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1365 (5th Cir. 1987) (citations omitted) ("An allegation of ambiguity. . . is of pivotal importance. Moreover, '[a]s necessity is the mother of invention, so is ambiguity the father of multiple reasonable constructions, and where lawyers are involved, one never lacks an eager parent of either gender.' . . . It is interesting, therefore, that the allegation of ambiguity in this case came, not from the parties, but from the district court.").

21

No. 08-11052

interpreted to incorporate only workers' compensation benefits, not a judgment in a negligence suit. It explained that

> the "Various Laws" exclusion could be interpreted as only excluding claims already covered by workers' compensation benefits rather than excluding all claims of employees, whether filed to collect workers' compensation benefits or damages by common-law. In such a case, there is more than one plausible interpretation of the "Various Laws" exclusion. Thus, applying the provisions of the "Various Laws" exclusion to the dispute before the Court produces an uncertain or ambiguous result, and the exclusion will be interpreted against AISLIC and in favor of coverage.

We agree with the district court that an "obligation" under "workers' compensation law" could be interpreted to refer only to benefits paid by the workers' compensation system, as the meaning of the term obligation has "many, wide, and varied meanings" that depends on the context in which the word is used. *See* Black's Law Dictionary (9th ed. 2009). Where negligence claims against nonsubscribers, at least traditionally, have been recognized as arising under common law, we conclude that it is reasonable to interpret the "Various Laws" exclusion to exclude only mandatory benefit payments.

## CONCLUSION

In summary, AISLIC has failed to meet its burden of proving that the "Various Laws" exclusion bars coverage of the Teels' claims and the judgment against Rentech Steel. AISLIC has not shown that the Texas Supreme Court would conclude either that a negligence claim against a nonsubscriber arises under the TWCA rather than common law, or that Texas Labor Code section 406.033 imposes any obligation upon Rentech Steel to pay the Teels' judgment. For these reasons, we AFFIRM the judgment of the district court.