# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 12, 2011

No. 10-50545
Summary Calendar

Lyle W. Cayce
Clerk

CANDICE COLE,

Plaintiff–Appellant,

v.

SANDEL MEDICAL INDUSTRIES, L.L.C.,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:09-CV-597

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Candice Cole appeals the district court's grant of summary judgment in favor of Sandel Medical Industries, L.L.C. (Sandel or the company), on her breach of contract and fraud claims. Cole also contends that the district court abused its discretion when it denied her leave to file a fourth amended complaint. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50545

## I

Sandel manufactures medical supplies designed to improve patient and hospital employee safety. To identify safety issues, the company cooperates with healthcare professionals by accepting online idea submissions as part of its research and design process. The company's sales representatives inform healthcare professionals that they may submit ideas and, if the idea is used, the person who submitted the idea first will receive compensation.

The company's standard idea agreement provides a payment of $250 upon execution, $500 when the first order is placed, and up to $4000 per year for five years. Of the company's twenty-eight products, twelve were inspired by submissions from healthcare professionals, and Sandel has entered into at least twelve compensation agreements with idea submitters. One submitter, whose idea was patentable, entered into an agreement with the company for a larger royalty.

Sandel launched a new line in 2004 dubbed "TIME OUT Products," designed to remind operating teams to verify that the correct surgical procedure is performed on the correct patient. Each product was orange and emblazoned with the words "TIME OUT" in boldface type. Initially, the company marketed TIME OUT markers, as well as sleeves and hoods to cover surgical instruments.

In 2005, a Sandel sales representative, Jeff Penfield, informed Cole, a nurse at a San Antonio hospital, that Sandel would pay for any ideas submitted by her that were used in a product. In February 2006, Cole submitted an idea for an "8 ½ by 11 ORANGE SHEET of paper that has in LARGE BOLD PRINT 'Time Out.'" Cole submitted her idea through Sandel's online submission form,

No. 10-50545

which makes no mention of financial compensation.  At the time of plaintiff's submission, the form stated:

> I do not give any rights in my submission to Sandel Medical Industries L.L.C.(SMI). Any rights in my submission may be given to SMI only in a future agreement between SMI and myself.
>
> I agree not to reveal my submission (verbally or in writing) to anyone other than SMI, for one year from the date of this agreement.
>
> SMI agrees not to use, sell, or disclose to others, any of the submitter's information provided above.  SMI accepts this submission only for evaluation.  SMI and submitter shall have no further obligations to each other, unless a seperate [sic] agreement is entered into.

Cole acknowledges that she agreed to these terms when she made her submission.  Shortly after Cole's submission, she received a letter from Sandel informing her that the company had decided not to pursue her idea, and releasing her from any further obligation to the company.

In 2007, the company began development of the TIME OUT Beacon, which is a surgical towel dyed orange and marked with "TIME OUT" in boldface letters. When she learned of the Beacon, Cole inquired whether it stemmed from her idea submission.  After an investigation, a Sandel employee informed Cole via email that "it looks like you were the first submitter of the Time Out Towel." Later, the company offered Cole its standard idea agreement, which stated that Cole was "the first health care professional to submit the Idea or Design to SMI and, therefore, SMI desires to compensate [Cole] for submission of the Idea or Design." The agreement identified the specific idea as "Large Time Out." Cole

No. 10-50545

did not agree with the terms of the agreement and submitted a counter-proposal, which the company rejected.

Cole then filed suit in state court seeking more than $1 million in damages, alleging breach of contract and fraud. After Sandel removed to federal court, Cole twice amended her complaint pursuant to Federal Rule of Civil Procedure (FRCP or Rule) 15. Her first amended complaint corrected glaring errors in the state court complaint and raised the amount of damages claimed to more than $10 million. The second amended complaint added factual detail sufficient to avoid dismissal of her fraud claim on Sandel's motion to dismiss for failing to state a claim with particularity as required by Rule 9(b). Prior to moving for summary judgment many months later, Sandel produced information indicating that it was paying another idea submitter for the towel idea, and that it offered Cole its standard idea agreement only to maintain goodwill with its idea submitters.

After Sandel moved for summary judgment on the breach of contract and fraud claims, Cole attempted to amend her complaint a third and fourth time to assert new claims for conversion, quantum meruit, and unjust enrichment. The district court denied Cole's motion to amend her complaint and entered summary judgment in favor of Sandel with respect to breach of contract and fraud. This appeal followed.

## II

We review the district court's grant of summary judgment de novo, applying the same standards as the district court.[1] We view the evidence in the

---

[1] *Am. Int'l Speciality Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 561 (5th Cir. 2010).

No. 10-50545

light most favorable to the nonmoving party.[2]   Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

## A

Under Texas law, a breach of contract claim requires proof of the existence of a valid contract.[4]   A contract is "legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations."[5] "The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain."[6]  However, an "agreement to make a future contract is enforceable only if it is specific as to all essential terms, and no terms of the proposed agreement may be left to future negotiations."[7]  "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree."[8]

---

[2] *Id.* at 562.

[3] FED. R. CIV. P. 56(a).

[4] *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied.)).

[5] *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000), *superseded by statute on other grounds*, TEX. GOV'T CODE ANN. § 311.034.

[6] *Id.* (citation and quotation marks omitted).

[7] *Id.* (citations and internal quotation marks omitted).

[8] *Id.* (collecting cases).

No. 10-50545

Applying these rules, it is clear that no contract was created between Cole and Sandel when she submitted her idea via the online submission form. Indeed, Cole admits that she agreed to the conditions specified, one of which stated that the parties "shall have no further obligations to each other, unless a seperate [sic] agreement is entered into." This language makes clear that by using the online submission form, Cole entered into an agreement to agree with Sandel. The agreement left open what price, if any, would be paid to Cole. Accordingly, the online submission form is not an enforceable agreement to compensate Cole for her idea.

Cole also argues that Penfield's statement concerning the company's reimbursement policy was an offer, and that her performance in submitting an idea created a unilateral contract with Sandel. Cole submitted an affidavit stating that "Mr. Penfield encouraged me to submit any ideas for patient safety to Sandel, and told me that if Sandel used one of my ideas in a product, Sandel would compensate me for using my idea." Though we are not convinced that Penfield's "encouragement" was an offer, for the purposes of this appeal, we assume without deciding that it was. It is hornbook law, however, that an offeror may revoke an offer prior to acceptance.[9] "Any clear manifestation of unwillingness to enter into the proposed bargain" serves as an effective revocation.[10] In our view, the online submission form constituted a new offer— for an agreement to agree, as discussed above. This new offer served as an

---

[9] RESTATEMENT (SECOND) OF CONTRACTS, § 42 (1981).

[10] *Id.* cmt. d; *see also Valencia v. Garza*, 765 S.W.2d 893, 896 (Tex. App.—San Antonio 1989, no writ) ("An offeree's power of acceptance terminates when the offeree receives from the offeror a manifestation of intention not to enter into a contract." (citing RESTATEMENT (SECOND) OF CONTRACTS, § 42 (1981))).

6

No. 10-50545

effective revocation of Penfield's offer because Cole was well aware, by the time she performed via submission of her idea, that the offer was no longer open. Cole's performance, therefore, did not give rise to a unilateral contract.

Finally, Cole argues that the doctrines of quasi estoppel and promissory estoppel bar Sandel from asserting that no contract exists. Quasi estoppel is an "equitable rule that a party cannot both retain benefits under a contract and escape the obligations imposed by that contract."[11] Here, Cole's claim for quasi estoppel fails because there was no contract between the parties. Cole's promissory estoppel argument is merely an attempt to introduce, for the first time on appeal, a separate ground for recovery. Accordingly, that argument is not properly before us.[12]

Because there was no contract between Cole and Sandel, the district court properly entered summary judgment in favor of Sandel on Cole's breach of contract claim.

**B**

Cole's fraud claims are also meritless. Under Texas law, the elements of fraud are

(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth

---

[11] *Neiman-Marcus Grp., Inc. v. Carter Hawley Hale Stores, Inc.*, 919 F.2d 368, 372 (5th Cir. 1990); *cf. Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding that, under the doctrine of quasi estoppel, a party that accepted contract benefits from a counterparty could not dispute the counterparty's standing to bring an action for breach).

[12] *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.*, 575 F.3d 491, 504 (5th Cir. 2009) ("[T]his Court generally does not consider issues raised for the first time on appeal.").

7

No. 10-50545

and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.[13]

Cole contends that Penfield's statement that the company would pay her if it used her ideas, along with the website's statement that the company would not use her idea without executing a separate agreement, were fraudulent. Cole has failed to present any evidence, however, that Penfield or the company knew that these statements were false at the time they were made. To the contrary, the evidence shows that the company regularly enters into agreements with idea submitters, and offered Cole herself such an agreement after it discovered it was using her idea.

Cole also argues that the company's statements via the online submission form that it would keep her idea confidential, as well as in an email sent two years later that "it looks like you were the first submitter of the Time Out Towel," were fraudulent. Cole has alleged no injury stemming from the former statement, and no action taken in reliance on the latter. Accordingly, we agree with the district court that Cole's fraud claim cannot withstand summary judgment.

## III

We now address whether the district court erred when it denied Cole's motion to amend her complaint for a fourth time. We review the district court's denial of a motion to amend for abuse of discretion.[14]

---

[13] *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam).

[14] *Fahim v. Marriott Hotel Serv., Inc.*, 551 F.3d 344, 347 (5th Cir. 2008).

No. 10-50545

Cole originally filed her complaint in state court on June 30, 2009. After removal to federal court, she twice amended her complaint—on July 29 and August 17 of the same year—pursuant to FRCP 15. In September, the parties submitted a proposed joint scheduling order specifying November 13 as the deadline for amendments to pleadings. When the scheduling order was issued, the court set December 14 as the final day to amend the pleadings.

On December 16, the case was reassigned to another district court judge in order to alleviate docket problems for the original judge. The new judge vacated and withdrew the scheduling order on December 18, issuing an amended scheduling order on December 28. The amended order did not contain a deadline for pleading amendments.

After Sandel moved for summary judgment on March 26, 2010, Cole attempted to file a third amended complaint on March 29. She failed to move for leave to file the compliant, however, a deficiency she corrected on March 30. The third amended complaint added conversion as a cause of action. On March 31, the district court struck Sandel's motion for summary judgment for failure to comply with the local rule limiting such filings to ten pages. On April 4, Cole moved for leave to file a fourth amended complaint, this time adding quantum meruit and unjust enrichment as causes of action. Finally, on April 6, Sandel refiled its motion for summary judgment in compliance with the page-limit.

The district court granted summary judgment in favor of Sandel on May 18, simultaneously denying Cole's motion for leave to file her fourth amended complaint. When there is no scheduling order, a motion to amend is evaluated under FRCP 15, which provides that the court "should freely give

leave when justice so requires."[15]  But when a scheduling order has been entered, under FRCP 16(b)(4), that order "may be modified only for good cause and with the judge's consent."  It is only after a showing of good cause that proposed amendments are evaluated under the more liberal Rule 15 standard.[16]  The district court evaluated Cole's motion under Rule 16(b) and found that there was no good cause to amend the scheduling order.  The court reasoned that its amended scheduling order applied only to future deadlines, but had no effect on the pleading deadline that had already passed when the amended order was entered.

Cole moved for reconsideration, arguing that no pleading deadline existed because the court's December 18 order vacated and withdrew the original scheduling order and the amended order contained no such deadline.  Therefore, Cole argued, her motion for leave to amend should be evaluated under the more lenient Rule 15 standard.  The district court rejected this argument, reiterating that its amended scheduling order was prospective, not retrospective.  The new order "did not change any deadlines which had already passed, but merely set new deadlines for future events."

On appeal, Cole continues to argue that the district court should have applied the Rule 15 standard.  We disagree.  The district court did not err when it determined that Rule 16(b) applied.  In any event, Cole could not have relied on the December 18 order vacating the original scheduling order when she failed

---

[15] FED. R. CIV. P. 15(a)(2).

[16] *Fahim*, 551 F.3d at 348 (citing *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)).

No. 10-50545

to amend her pleadings by December 14, for the obvious reason that the pleading deadline preceded the date of vacatur.

Cole alternatively argues that the district court abused its discretion when it determined that no good cause existed to grant leave allowing her fourth amended complaint. Rule 16(b) "requires a party 'to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[17] "Four factors are relevant to good cause: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'"[18]

The district court looked to factors one and three in denying Cole leave to amend. Specifically, the court noted that Cole provided no persuasive explanation for her failure to timely move for leave to amend and that allowing amendment to add new claims would significantly prejudice Sandel, which had already filed a dispositive motion on Cole's second amended complaint.

Cole contends good cause exists because she discovered new facts in documents obtained through discovery in February 2010 and Penfield's March 26, 2010, deposition. Despite repeated assertions that she discovered new pertinent information, however, Cole fails to point to any new fact necessary to her additional claims. Rather, the new quasi-contractual claims for quantum meruit and unjust enrichment were based on the same set of facts as her breach

---

[17] *Id.* (quoting *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

[18] *Id.* (quoting *Sw. Bell*, 346 F.3d at 546).

No. 10-50545

of contract and fraud claims,[19] and there is no reason she could not have asserted them well before Sandel moved for summary judgment.[20]

Cole quite understandably points to the second factor—the importance of the amendment to her case. It is plausible that in the circumstances presented here, a quasi-contractual claim could survive summary judgment; whether a jury would equate the idea for a TIME OUT sheet of paper with the TIME OUT towel is another question. But the focus of the 16(b) inquiry is on the "'diligence of the party needing the extension.'"[21] Because Cole can point to no reason that the claims were not asserted earlier, along with the fact that Sandel would be substantially prejudiced, we refuse to interfere with the district court's "'broad discretion to preserve the integrity and purpose of the pretrial order.'"[22] The district court did not abuse its discretion in denying Cole leave to amend her complaint.

Accordingly, we need not reach Cole's arguments concerning quantum meruit and unjust enrichment.[23]

\*        \*        \*

---

[19] Cole does not raise her conversion claim on appeal.

[20] *See S&W Enters.*, 315 F.3d at 536 (concluding that the district court did not abuse its discretion in denying leave to amend when "the same facts were known to [plaintiff] from the time of the original complaint to the time it moved for leave to amend").

[21] *Fahim*, 551 F.3d at 348 (quoting *S&W Enters.*, 315 F.3d at 535).

[22] *Id.* (quoting *Sw. Bell*, 346 F.3d at 547).

[23] *See Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of the Republic of Venez.*, 575 F.3d 491, 504 (5th Cir. 2009) ("[T]his Court generally does not consider issues raised for the first time on appeal.").

No. 10-50545

For the foregoing reasons, we AFFIRM the judgment of the district court.