# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 26, 2013

Lyle W. Cayce
Clerk

No. 12-40493

DOUG MORGAN; ROBIN MORGAN; JIM SHELL; SUNNY SHELL; SHERRIE VERSHER; CHRISTINE WADE,

Plaintiffs-Appellees

v.

PLANO INDEPENDENT SCHOOL DISTRICT,

Defendant-Appellant

Appeal from the United States District
for the Eastern District of Texas

Before KING, DAVIS, and ELROD, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

In this appeal, Plano Independent School District ("PISD") argues that the Texas Religious Freedom Restoration Act's ("TRFRA") pre-suit notice requirement is a jurisdictional prerequisite to suit and that because Plaintiffs did not strictly comply by sending a letter certified mail, return receipt requested, PISD's governmental immunity has not been waived. Finding that compliance with the pre-suit notice requirement is jurisdictional under Texas law and that the district court erred in denying PISD's Motion for Partial Summary Judgment against the Plaintiffs, we REVERSE.

No. 12-40493

I.

The facts in this case are well known to this court,[1] and while this appeal presents a very narrow legal question that does not turn on those underlying facts, a brief recitation is necessary to understand the context of the parties' arguments.

Plaintiffs in this case are the parents of four former elementary school students ("the Morgans")[2] in the PISD who sued the school district over an alleged violation of First Amendment rights. Plaintiffs complained that the Morgans' third-grade son Jonathan was prevented from distributing a "candy cane ink pen" with a laminated card containing a religious message about the legend of the candy cane and its Christian origins at a winter break party on December 19, 2003.

Doug Morgan (father of Jonathan Morgan) prior to the December 2003 winter party, wrote an e-mail to Carole Greisdorf, assistant superintendent of the PISD, to investigate PISD's policies and expressing concern about the policies and regulations affecting the "[r]eligious expression of our children." Greisdorf responded that concerns about how religious expression is handled should first be addressed with the school principal. Doug, and his wife, Robin Morgan, then met personally with Jonathan's elementary school principal, Lynn Swanson, on December 4, 2003. During that meeting Principal Swanson informed the Morgans that it was the practice, policy, and custom of the PISD that religious materials could not be distributed while on school property

---

[1]  Indeed, this is the third appeal of this matter to the Fifth Circuit. Previously, this court published an opinion concerning the facial constitutionality of the amended PISD speech policies, *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740 (5th Cir. 2009), and an opinion concerning qualified immunity for certain government officials regarding religious speech of elementary school students on public school campuses, *Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) (en banc).

[2] While plaintiffs are the Morgan, Shell, Versher, and Wade plaintiffs, the Morgans are the plaintiffs applicable to the matter at hand.

because of the religious viewpoint of the materials and that only secular materials and gifts could be distributed or displayed at the party. On December 17, 2003, Morgan again e-mailed Greisdorf and expressed his "strong desire" that his son be allowed to engage in religious expression by distributing the candy canes at the party. That same day Greisdorf responded to this e-mail by confirming that Principal Swanson was "exactly right in her interpretation of the Plano ISD policies."

Later, on December 17, 2003, the Morgans, through their attorney, sent a demand letter entitled "Unconstitutional Violation of Right to Seasonal Religious Expression" to Principal Swanson, Superintendent Douglas Otto, Deputy Superintendent Danny Modisette, and all the members of the PISD Board of Trustees. The letter complained that the PISD and its policies, customs, and procedures were interfering with Jonathan Morgan's right to religious expression and contended that Morgan had a right to express his religious faith through the distribution of personal gifts to fellow students. The letter also included a "demand," requesting notification that Jonathan and students would be free to distribute their gifts to fellow students. It concluded that "[u]nless we hear from you within this time frame, we will seek redress in federal court." As the party was two days away at that point, the letter was delivered to Principal Swanson via fax and U.S. mail, and the letter was e-mailed to all others. It is undisputed that the letter was not sent by certified mail, return receipt requested. On December 18, 2003, PISD's attorney responded to the letter and informed the Morgans and their attorney that Jonathan could not distribute candy canes in the classroom or hallways in conjunction with the holiday party.

The families filed the present lawsuit against the PISD on December 15, 2004, prior to the next scheduled winter break party, which was to occur on Friday, December 17, 2004. The original and amended complaints contain six counts: violation of freedom of speech under the federal and state constitutions,

No. 12-40493

violation of equal protection rights, free exercise of religion and establishment clause, intentional infliction of emotional distress, and violation of religious freedom protected by the TRFRA. Plaintiffs sought a temporary restraining order ("TRO"), preliminary and permanent injunctions, a declaratory judgment, nominal damages, punitive damages, and attorneys' fees and costs against PISD. On December 16, 2004, the district court granted the request for a TRO and enjoined the school district and school officials from interfering with or prohibiting Plaintiffs and other students from distributing religious viewpoint gifts at the 2004 winter break party or from committing any acts calculated to cause students to feel uncomfortable because of a student's exercise of religion.

After six years of litigation, on May 24, 2011, PISD filed a Motion for Partial Summary Judgment on (1) Plaintiffs' Texas Constitution claims and (2) Plaintiffs' TRFRA claims. On March 30, 2012, the district court granted partial summary judgment on the Texas Constitution claims and found that the Versher, Shell, and Wade Plaintiffs could not sue under the TRFRA because they failed to give proper notice prior to filing suit; but the court denied partial summary judgment as to the Morgans, finding that the Morgan Plaintiffs' notice was sufficient and that their TRFRA suit was not barred. This left only the Morgans' TRFRA as-applied claims as to the 2004 policy pending.[3] The present appeal is limited to the Morgans' TRFRA claims, more particularly, PISD's contention that the written notice sent, received, and responded to by PISD is

---

[3] At issue was the PISD's 2004 policy as well as its 2005 policy (PISD's amended student distribution policy that was less restrictive than its predecessor). The district court dismissed Plaintiffs' TRFRA claims regarding the 2005 policy, both facially and as-applied, and also dismissed the Plaintiffs' TRFRA claim regarding the facial constitutionality of the 2004 policy.

This summary judgment ruling does not concern the merits of the various as-applied federal constitutional challenges to the PISD's prior student distribution policy, which remain pending.

No. 12-40493

not sufficient notice so as to waive governmental immunity because the manner of delivery was not by certified mail, return receipt requested.

II.

The parties first dispute whether the district court's order denying governmental immunity from suit is an immediately appealable order. In *Shanks v. AlliedSignal, Inc.*, this court stated that "[a]lthough appellate jurisdiction under § 1291 is a matter of federal law, we look to state law to determine whether the basis of [a defendant's] claim is properly characterized as an immunity from suit or merely a defense to liability." 169 F.3d 988, 992 (5th Cir. 1999). Because it is well-established under Texas law that PISD's governmental immunity is not a mere defense to suit but rather is complete immunity from suit, this court has jurisdiction.[4] And because governmental immunity from suit defeats a trial court's jurisdiction, whether a trial court has jurisdiction is a question of law subject to de novo review. *See Briseno v. Ashcroft*, 291 F.3d 377, 379 (5th Cir. 2002); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

III.

The TRFRA (codified at TEX. CIV. PRAC. & REM. CODE §§ 110.001-110.012) provides that "a government agency may not substantially burden a person's free exercise of religion" unless the burden is in "furtherance

---

[4] *See, e.g.*, *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006) ("[The] doctrine of governmental immunity . . . protects political subdivisions of the State, including counties, cities, and school districts. A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature." (citation omitted)); *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006) ("In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." (footnote omitted)); *see also* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) ("A person may appeal from an interlocutory order . . . that . . . grants or denies a plea to the jurisdiction by a governmental unit . . . .").

No. 12-40493

of a compelling governmental interest" and is "the least restrictive means of furthering that interest." § 110.003. Under section 110.008: "*Subject to Section 110.006*, sovereign immunity to suit and from liability is waived and abolished to the extent of liability created by Section 110.005, and a claimant may sue a government agency for damages allowed by that section."[5] (emphasis added).

Section 110.006, in turn, provides:

(a) A person may not bring an action to assert a claim under this chapter unless, 60 days before bringing the action, *the person gives written notice to the government agency by certified mail, return receipt requested*:

> (1) that the person's free exercise of religion is substantially burdened by an exercise of the government agency's governmental authority;
> (2) of the particular act or refusal to act that is burdened; and
> (3) of the manner in which the exercise of governmental authority burdens the act or refusal to act.

(b) Notwithstanding Subsection (a), a claimant may, within the 60-day period established by Subsection (a), bring an action for declaratory or injunctive relief and associated attorney's fees, court costs, and other reasonable expenses if:

> (1) the exercise of governmental authority that threatens to substantially burden the person's free exercise of religion is imminent[6] . . . .

---

[5] Section 110.005 delineates the remedies an individual may recover including declaratory relief, injunctive relief, reasonable attorney's fees, and compensatory damages not to exceed $10,000.

[6] The Morgans first contend that they did not need to comply with the notice requirements because the TRFRA explicitly waives the notice requirements when the lawsuit is for declaratory or injunctive relief and the threat of the burden to the plaintiff's religious freedom is imminent. *See* § 110.006(b). The Morgans point to the fact that they actually obtained a TRO on December 16, 2004, which enjoined the school district and school officials from prohibiting student distribution of religious viewpoint gifts. This argument is unavailing, for the statute does not purport to waive the pre-suit notice requirement if a threat to religious expression is imminent, it just allows one to bring suit without having to wait 60 days. And there is also no "imminence" here as the Morgans argue: the issue on which this suit is based is the 2003 party in which Jonathan was prohibited from distributing his religious message, but the Morgans did not file for a TRO prior to the 2003 party (the subject of their 2003 demand letter) and instead waited to file their TRO application until immediately before the

No. 12-40493

. . . .

(c) A government agency that receives a notice under Subsection (a) may remedy the substantial burden on the person's free exercise of religion.

(emphasis added).

PISD's argument is straightforward:  Section 110.006 requires providing "written notice to the government agency by certified mail, return receipt requested," 60 days before bringing an action under the TRFRA. PISD is a public school district and, absent a waiver effected by clear and unambiguous language, PISD enjoys governmental immunity from suit and liability.[7] *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 & n.3, 697 (Tex. 2003); *Bonillas v. Harlandale Indep. Sch. Dist.*, 832 F. Supp. 2d 729, 735 (W.D. Tex. 2011). PISD cites numerous cases standing for the proposition that statutory waivers of immunity (and statutory language in general) must be strictly construed by the courts and applied "as written." *City of Hous. v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006).[8] Thus, PISD argues that because the Morgans did not strictly

---

next year's 2004 party.

[7] "Sovereign immunity and . . . governmental immunity . . . exist to protect the State and its political subdivisions from lawsuits and liability for money damages. Such lawsuits 'hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes.'" *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citation omitted) (quoting *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006)). Furthermore,

Courts often use the terms sovereign immunity and governmental immunity interchangeably. However, they involve two distinct concepts. Sovereign immunity refers to the State's immunity from suit and liability. In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts.

*Wichita Falls*, 106 S.W.3d at 694 n.3 (citations omitted).

[8] *See Tex. Dep't. of Transp. v. York*, 284 S.W.3d 844, 846 (Tex. 2009) ("Legislative consent to waive sovereign immunity by statute must be by 'clear and unambiguous language,' TEX. GOV'T CODE § 311.034, and suit can then be brought 'only in the manner indicated by that consent.'" (quoting *Wichita Falls*, 106 S.W.3d at 694)); *Mission Consol. Ind. Sch. Dist.*, 253

comply with the statute, i.e., by sending pre-suit notice certified mail, return receipt requested, PISD has not waived its immunity.

Although the statute requires pre-suit notice via certified mail, return receipt requested, "just because a statutory requirement is mandatory does not mean that compliance with it is jurisdictional." *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999). In construing the TRFRA, the question for this court is whether the pre-suit notice requirement is jurisdictional—that is, a condition of the TRFRA's waiver of immunity from suit—or not. Of course, if the pre-suit notice requirement is jurisdictional, the "'failure of a jurisdictional requirement deprives the court of the power to act (other than to determine that it has no jurisdiction), and ever to have acted, as a matter of law.'" *City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009) (quoting *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 359 (Tex. 2004), *superseded by statute*, TEX GOV'T CODE § 311.034).

To argue that the pre-suit notice provision is jurisdictional, PISD points to section 311.034 of the Texas Government Code ("Texas Code Construction Act"), which reads: "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental

---

S.W.3d at 655 ("Because the Legislature is better suited to balance the conflicting policy issues associated with waiving immunity, we look to pertinent legislative enactments to determine the extent to which immunity has been voluntarily relinquished."); *Wichita Falls*, 106 S.W.3d at 697 ("[W]hen construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity."); *see also Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010) ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind."); *City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006) ("We must construe this statute according to what it says, not according to what we think it should have said."); *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997) ("'Courts must take statutes as they find them. . . . They are not responsible for omissions in legislation.'" (quoting *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985)); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose.").

entity." TEX GOV'T CODE § 311.034. While section 311.034's language is explicit that pre-suit notice requirements in a suit against a governmental entity are jurisdictional,[9] this language was not added to the statute until 2005, after the Morgans filed suit.[10] Thus the Morgans argue that section 311.034's language should not apply.

Although it may have been unclear before 2010 whether section 311.034's language could apply to a pending suit, the Texas Supreme Court's decision in *University of Texas Southwestern Medical Center at Dallas v. Estate of Arancibia*, 324 S.W.3d 544 (Tex. 2010), removes all doubt. In *Arancibia*, Southwestern Medical Center filed a plea to the jurisdiction because it contended it had no pre-suit notice of Arancibia's claim under the Texas Tort Claims Act. *Id.* at 547. Arancibia's suit, like the case at hand, was filed before the 2005 amendment to section 311.034. *Id.* The court stated that a "prohibition against retroactive application of laws does not apply to procedural, remedial, or jurisdictional statutes" and that a statute "does not operate retroactively merely because it is applied in a case arising from conduct predating the enactment." *Id.* at 547-48. Specifically construing section 311.034, the court held that "[s]tatutes—like section 311.034—that do not deprive the parties of a substantive right and 'speak to the power of the court rather than to the rights or obligations of the parties' may be applied to cases pending at the time of enactment." *Id.* at 548 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274

---

[9] *See also Colquitt v. Brazoria Cnty.*, 324 S.W.3d 539, 543 (Tex. 2010) ("[W]e agree that section 311.034 of the Code Construction Act makes compliance with the notice provisions jurisdictional . . . .").

[10] In *University of Texas Southwestern Medical Center at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 364 (Tex. 2004), the Texas Supreme Court concluded that the notice provision in the Torts Claim Act, while mandatory, was not a condition of the Act's waiver of immunity. After the court's decision in *Loutzenhiser*, the Legislature amended section 311.034 of the Code Construction Act to explicitly make notice jurisdictional. *See* Act of May 25, 2005, 79th Leg., R.S. ch. 1150, 2005 Tex. Gen. Laws 3783. The amendment took effect September 1, 2005.

(1994)). Thus the court concluded that section 311.034's amended language applies to pending cases and that a "purported failure to provide notice would deprive the trial court of jurisdiction, an issue that may be raised on interlocutory appeal." *Id.*

Even so, the Morgans argue that there is no explicit language in the TRFRA that provides that the pre-suit notice is strictly required or that the provision is meant to be jurisdictional. The Morgans contend that the only purpose of the notice provision in the TRFRA is to provide the governmental agency an opportunity to "remedy the substantial burden on the person's free exercise of religion," such that a "person with respect to whom a substantial burden on the person's free exercise of religion has been cured by a remedy implemented under this section may not bring an action under Section 110.005." TEX. CIV. PRAC. & REM. CODE § 110.006(c),(e). Thus the Morgans argue that based on the facts in the instant case—where PISD's attorney actually responded to the Morgans' faxed demand letter—substantial compliance will suffice when a government agency has actual notice that an individual's religious freedom is burdened.

Yet PISD points out that Texas lawmakers easily could have included in the TRFRA's waiver of immunity provisions that *actual notice* suffices, as they did in the Texas Tort Claims Act,[11] and that the legislature presumably opted against actual notice on purpose; thus Texas lawmakers required strict compliance, not substantial compliance.

The Morgans also rely, as did the magistrate judge and in turn the district court, on *Roccaforte v. Jefferson County*, 341 S.W.3d 919 (Tex. 2011), for the proposition that substantial compliance with a notice provision suffices. In *Roccaforte*, the plaintiff failed to strictly comply with Texas Local Government

---

[11] *See* TEX. CIV. PRAC. & REM. CODE § 101.101(c) (stating that the notice requirements of that Act "do not apply if the governmental unit has actual notice" of injury).

No. 12-40493

Code 89.0041, which provides that when filing suit against a county, "written notice must be delivered by certified or registered mail by the 30th business day *after* suit is filed."[12] *Id.* at 925 (emphasis added) (quoting TEX. LOC. GOV'T CODE § 89.0041(b)). The *Roccaforte* plaintiff provided notice "by personal service of process, rather than registered or certified mail as the statute contemplates." *Id.* at 920. The Texas Supreme Court held that compliance with the notice requirements under section 89.0041 was not jurisdictional because, importantly, "Section 311.034 applies to *prerequisites* to suit, not notice requirements that can be satisfied only *after* suit is filed." *Id.* at 925 (emphasis in original).[13] Because *Roccaforte* plainly dealt with a form of post-suit notice and section 311.034's language clearly deals with pre-suit notice, we are convinced that the magistrate judge's reliance on *Roccaforte* is misplaced.

The Texas Supreme Court's decision in *Prairie View A&M University v. Chatha*, 381 S.W.3d 500 (Tex. 2012), supports our view that *Roccaforte* does not control this case. In interpreting section 311.034's language that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity," the Texas high court found that the term "statutory prerequisite" necessarily has three components. First, "in order to fall within the ambit of section 311.034, a prerequisite must be found in the relevant statutory language." *Id.* at 512. Second, "the prerequisite must be a requirement." *Id.* And finally,

---

[12] The written notice was to contain the style and cause number of the suit, the court in which the suit was filed, the date on which the suit was filed, and the name of the person filing suit. TEX. LOC. GOV'T CODE § 89.0041(b)(1)-(4).

[13] See also *University of Texas Health Science Center at San Antonio v. Webber-Eells*, 327 S.W.3d 233, 239 (Tex. App. 2010), wherein the plaintiff tried to argue that substantially complying with a notice requirement was sufficient—and cited post-suit notice cases standing for this proposition—the court stated that in those instances it was "[o]nly after determining that the statute was not jurisdictional did the courts determine that substantial compliance with the statute was sufficient."

No. 12-40493

the term "pre" indicates the requirement must be met before the lawsuit is filed. *See Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 925 (Tex. 2011) (holding that post-suit notice requirement was not jurisdictional, even in light of section 311.034, because post-suit notice is not a "prerequisite" to suit). Thus, according to the plain language of section 311.034, the term "statutory prerequisite" refers to statutory provisions that are mandatory and must be accomplished prior to filing suit.

*Id.* Because the Texas Supreme Court concluded that section 311.034 does not apply to post-suit notice requirements and explicitly distinguished *Roccaforte* as a case that involved post-suit notice, neither *Roccaforte*'s conclusion nor analysis controls this case. Thus, the three statutory prerequisites are met:  the TRFRA imposes statutory prerequisites to filing suit, the TRFRA contains language that is mandatory, and the pre-suit requirement must be accomplished prior to filing suit.[14] Thus, section 311.034 is triggered and the pre-suit notice requirements are jurisdictional.

The Morgans next argue that by its language section 311.034 applies only to *sovereign* immunity but does not apply to the *governmental* immunity that is at issue here.[15]  In *Travis Central Appraisal District v. Norman*, 342 S.W.3d 54

---

[14] "A person *may not bring* an action to assert a claim under this chapter *unless*, 60 days *before bringing the action*, the person gives written notice to the government agency by certified mail, return receipt requested[.]"  TEX. CIV. PRAC. & REM. CODE § 110.006 (emphasis added).

[15] Texas Government Code § 311.034 provides, in full:

311.034. Waiver of *Sovereign* Immunity

In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of *sovereign* immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person," as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction. Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.

(emphasis added).

(Tex. 2011), the Texas Supreme Court stated: "Sovereign and governmental immunity are . . . related . . . concepts that differ only in scope. Their similarity sometimes causes the two terms to be used interchangeably." *Id.* at 58. In *Travis*, the court construed Texas Labor Code section 504.053's provision which read "[n]othing in this chapter waives sovereign immunity or creates a new cause of action." *Id.* at 57. Even though the provision "spoke to sovereign immunity rather than governmental immunity," the court concluded that Chapter 504 of the Labor Code applies to political subdivisions and held that the "[sovereign] immunity referenced in the . . . no-waiver provision refers to the immunity applicable to such subdivisions [i.e., governmental immunity]." *Id.* at 57-58.[16]

The Morgans also cite *Barr v. City of Sinton*, 295 S.W.3d 287 (Tex. 2009), where the Texas Supreme Court interpreted the TRFRA in the context of a zoning ordinance that precluded the use of religious halfway homes. In *Barr* the court, in a footnote, stated that while the plaintiff's attorney sent a letter to the City, the "trial court found that '[p]laintiffs failed to give notice as required by the Religious Freedom Act', [but] the City does not argue that here." *Id.* at 292

---

[16] *See also City of Dallas v. Carbajal*, 324 S.W.3d 537, 537-38 (Tex. 2010) (stating that under section 311.034 the "provision of notice is a jurisdictional requirement in all suits against a governmental unit" and applying section 311.034 to a city, which enjoys governmental rather than sovereign immunity); TEX. GOV'T CODE § 2007.004 (using the terms "governmental immunity" and "sovereign immunity" interchangeably); *City of Hous. v. Williams*, 353 S.W.3d 128, 134-35 (Tex. 2011) (statute which used the term "sovereign immunity" waives a governmental entity's, including a school district's, immunity from suit).

The Morgans also rely on language from *City of DeSoto v. White*, 288 S.W.3d 389 (Tex. 2009), in which the court stated: "Section 311.034 specifically addresses waivers of *sovereign* immunity, an issue not implicated here." *Id.* at 396 (emphasis added). Yet we do not believe the court's statement was meant to limit section 311.034 to *sovereign* immunity specifically, as the Morgans argue. At issue in *DeSoto* was a notice provision by which the City was required to give notice to a suspended police officer that if the officer appealed to a hearing examiner, his ability to seek further review in district court would be limited; but the City failed to do so. *Id.* at 391. While the police officer argued that section 311.034 applied to the City's failure to provide him with notice of this limitation, the court concluded that section 311.034 simply had no application on those facts. *See id.* 395-96.

n.8. Admittedly, this would undercut the conclusion that compliance with the pre-suit notice provision is jurisdictional, for if it were the court would have dismissed that case for lack of jurisdiction. Even so, *Barr* can be reconciled with our conclusion that the pre-suit notice is jurisdictional: the opinion provides no further discussion or analysis as to why the plaintiff's notice was insufficient. Additionally, *Barr* was decided prior to *Arancibia* so the court could not yet rely on *Arancibia*'s guidance that the amended language of section 311.034 is meant to apply to cases pending at the time of its enactment.[17]

In summary, section 110.006 of the TRFRA requires pre-suit notice in the form of certified mail, return receipt requested, 60 days prior to filing suit; section 311.034 provides that statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity; and *Arancibia* holds that section 311.034 applies to cases pending at the time of its enactment.[18] While Plaintiffs request that we certify to the Texas Supreme Court whether this pre-suit notice requirement is jurisdictional, we find the statute clear and are satisfied that the Texas Supreme Court would apply the statute as written. Because it is undisputed that the Morgans' demand letter did not comply with the jurisdictional pre-suit notice requirements, PISD's governmental immunity is not waived.[19]

---

[17] The Morgans also cite *A.A. ex rel. Betenbaugh v. Needville Independent School District*, 611 F.3d 248 (5th Cir. 2010) because it appears that the plaintiffs in *Needville* made their TRFRA claims known through e-mails and face-to-face meetings, as the Morgans did here. *See id.* at 254-55. Yet in *Needville* there is simply no discussion in the opinion as to whether or not the plaintiffs complied with the TRFRA's notice provision. *See id.* at 257. Thus this is not particularly helpful to the Morgans because without any discussion on this point there is simply no reason to assume the Needvilles did not comply with the notice provisions of the statute.

[18] *See* TEX. CIV. PRAC. & REM. CODE § 110.006; TEX. GOV'T CODE § 311.034; *Arancibia,* 324 S.W.3d 544 (Tex. 2010).

[19] Because we conclude that the noncompliance with the TRFRA's pre-suit notice requirements is a jurisdictional bar to suit, we need not address PISD's argument that the

No. 12-40493

IV.

For the reasons stated above, we REVERSE the judgment of the district court and dismiss Plaintiffs' TRFRA claim for lack of jurisdiction.

---

contents of the Morgans' letter did not conform to the requirements of the TRFRA or the Morgans' contention that PISD waived any argument that the TRFRA pre-suit notice was insufficient by waiting over six years to raise it.

No. 12-40493

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

This appeal presents an important and novel issue of Texas law: Whether the Texas Religious Freedom Restoration Act's ("TRFRA") notice-by-certified-mail requirement is jurisdictional, such that the Morgans' service of notice by fax deprives a court of jurisdiction to hear their claims, now pending for more than six years. *See* Tex. Gov't Code § 311.034; Tex. Civ. Prac. & Rem. Code § 110.006. In the absence of directly controlling precedent from the Texas Supreme Court, the district court and the magistrate judge made an *"Erie* guess" about how the state court would rule on the issue. *See SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) ("In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case." (quotation marks and citation omitted)). In so doing, both concluded that the method-of-service terms in TRFRA's notice provision are not jurisdictional and that the Morgans' notice was sufficient.[1] The majority opinion reaches the opposite conclusion, based on its

---

[1] The majority opinion focuses on the Morgans' failure to send notice to PISD by certified mail, return receipt requested; it does not address whether the notice was otherwise sufficient under TRFRA. *See* Maj. Op. at 14 n.19. PISD contends that the Morgans' notice did not satisfy the other notice criteria because it did not reference TRFRA or refer to the other elements in TRFRA's notice provision. I would reject PISD's argument.

TRFRA specifies that a plaintiff must give written notice:

(1) that the person's free exercise of religion is substantially burdened by an exercise of the government agency's governmental authority;
(2) of the particular act or refusal to act that is burdened; and
(3) of the manner in which the exercise of governmental authority burdens the act or refusal to act.

Tex. Civ. Prac. & Rem. Code § 110.006(a). TRFRA does not require that the plaintiff's notice explicitly reference the statute, as PISD apparently assumes it must, and the Morgans' letter fulfills the other statutory requirements: It is framed in terms of an unconstitutional burden on religious expression, discusses Jonathan Morgan's desire to distribute religious materials, and describes PISD's prohibition against giving such materials as gifts at the school party.

16

construction of the statutory text and interpretation of two Texas Supreme Court cases in particular.

The plain text should be the first and—if at all possible—the only step in a statutory analysis. But we "are bound to apply [Texas] law *as interpreted by the state's highest court.*" *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010) (alteration in original) (emphasis added) (quoting *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000)).[2] "We are emphatically not permitted to do merely what *we* think best; we must do that which we think the [Texas] Supreme Court would deem best." *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir. 1986) (*en banc*) (citation omitted)*, abrogated in part on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991). Properly framed, then, the question for us is whether the Texas Supreme Court would interpret the method-of-service requirement in TRFRA as a jurisdictional condition and "deem [it] best" to gut the Morgans' claim because they sent a letter by fax rather than certified mail, return receipt requested. *See id.* Based on the precedent I discuss below, the Texas Supreme Court arguably would disagree with the majority opinion's answer to this question. I would avoid this result by certifying the case to the Texas Supreme Court. *See id.* (explaining that "[w]e certify questions in order to avoid having to make unnecessary *Erie* guesses" (internal quotation marks

---

[2] When making an *Erie* guess about how the Texas Supreme Court would rule on an issue, our precedent specifies that we consider the following:

> (1) decisions of the [Texas] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Texas] Supreme Court decisions on related issues, (3) dicta by the [Texas] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Texas] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

*Rentech Steel*, 620 F.3d at 564 (quoting *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006)).

omitted)). Because the majority opinion does not do so, and because I am not convinced that the Texas Supreme Court would reach the same conclusion, I respectfully dissent.

The majority opinion centers on the text of section 110.006 and section 311.034, and it emphasizes the Texas Supreme Court's general statements in *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 511 (Tex. 2012), and *University of Texas Southwestern Medical Center at Dallas v. Arancibia*, 324 S.W.3d 544 (Tex. 2010). *See* Maj. Op. at 6–12. The majority opinion's approach is reasonable. But, in my view, it glosses over important qualifications to the Texas Supreme Court's holding in *Arancibia* and fails to account for other Texas Supreme Court cases that undermine its conclusion.[3]

Turning first to *Arancibia*, the Texas Supreme Court addressed the following issue: Whether section 311.034 applied to a Texas Tort Claims Act lawsuit filed years before the legislature enacted section 311.034. *See* 324 S.W.3d at 546–47; *see also* Tex. Civ. Prac. & Rem. Code § 101.101(a) (requiring plaintiffs suing under the Texas Tort Claims Act to notify the government of a claim within six months, reasonably describing the injury, the time and place of the incident, and the incident itself). For the purpose of this appeal, the key part of the *Arancibia* court's reasoning states:

> Statutes—like section 311.034—that do not deprive the parties of a substantive right and speak to the power of the court rather than to the rights or obligations of the parties *may be* applied to cases

---

[3] With regard to the general statements that the majority opinion quotes from *Chatha* and *Arancibia*, I am reminded of a "canon of unquestionable vitality": we are "'not to disregard that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used.'" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 399 (1821)); *see also infra* n.6 (observing that the Texas Supreme Court has not applied the general statements from *Chatha* and *Arancibia* to bar a claim under TRFRA or any other statute that requires pre-suit notice).

> pending at the time of enactment.  We agree that it is *appropriate* to do so *here*, and such a construction is not retroactive.

*Arancibia*, 324 S.W.3d at 548 (emphasis added) (internal citations and quotation marks omitted).  If, by this language, the *Arancibia* court held that section 311.034 *always* applies to cases pending when it was enacted, then the majority opinion reaches the correct result.  But the emphasized statements are difficult to square with such an absolute standard.  The permissive, case-specific language that the court chose to use in crafting its holding is pointless if *Arancibia* established a blanket rule—otherwise, "may" really means "must." That the Texas Supreme Court determined it was "appropriate" to apply section 311.034 *there* does not show that court would reach the same conclusion *here*.[4] This is especially true considering that, on the facts in *Arancibia*, the court's

---

[4] Delving into the case law that the *Arancibia* court relied on further supports this conclusion.  For example, the court quoted *Landgraf* for the proposition that "the Supreme Court of the United States has 'regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed.'" *Arancibia*, 324 S.W.3d at 548 (quoting 511 U.S. at 274).  Looking to *Landgraf* reveals that it supported this statement with citations to cases in which a jurisdictional rule "simply change[d] the tribunal that [was] to hear the case." 511 U.S. at 274 (quoting *Hallowell v. Commons*, 239 U.S. 506, 508 (1916)).  In other words, despite the ostensibly broad reach of the statement in *Landgraf*, it did not necessarily establish a rule that a court may always apply a jurisdictional statute to a pending claim, even when doing so will eliminate the availability of *any* tribunal for the claim. *Cf. Sw. Bell Tel. Co. v. City of Kountze*, 543 S.W.2d 871, 874–75 (Tex. Civ. App.—Beaumont 1976, no writ) (applying a statute granting an agency exclusive jurisdiction over a claim pending on interlocutory appeal, and then requiring the trial court to dismiss the lawsuit because the statute did not "destroy the rights of plaintiff; it simply [took] away from the district court the jurisdiction to adjudicate the question and confer[red] the exclusive jurisdiction upon another tribunal, namely, the regulatory commission").  The *Arancibia* court also quoted *Landgraf* for the premise that "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." 324 S.W.3d at 548.  But *Landgraf* went on to state: "[T]he mere fact that a new rule is procedural does not mean that it applies to every pending case. A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime . . . ." 511 U.S. at 275 n.29.

holding did not result in pouring the plaintiffs out based on a technicality that the opposing party raised more than six years into the lawsuit.[5]

Looking to other Texas Supreme Court decisions further undermines the majority opinion's rationale.[6]  For example, in *Barr v. City of Sinton*, the Texas Supreme Court confronted a TRFRA claim based on a city zoning ordinance that precluded the use of homes to provide free housing and religious instruction to recently released prisoners.  295 S.W.3d at 289.  In its factual recitation, the court noted that "[a]lthough the trial court found that 'plaintiffs failed to give notice as required by the Religious Freedom Act', the City does not argue that here."  *Id.* at 292 n.8 (internal alteration omitted) (citing Tex. Civ. Prac. & Rem. Code § 110.006(a)).  Notwithstanding this observation and without any analysis of its jurisdiction in light of this express finding, the court proceeded to decide the merits of the appeal.  *See id.* at 294–308.  If the plaintiffs' failure to provide notice as TRFRA requires was a jurisdictional defect, then the trial court's finding was dispositive: the Texas Supreme Court lacked jurisdiction to address

---

[5]  PISD did not press its challenge to the Morgans' compliance with TRFRA's notice provision until six years into the litigation of this case and after two appeals to this court.  *See Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) (*en banc*); *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740 (5th Cir. 2009).

[6]  The *absence* of certain Texas Supreme Court precedent also seems relevant to our decision.  In none of the cases that the majority opinion cites did a Texas court apply section 311.034 to bar a claim for failure to comply with the method-of-service requirement under TRFRA or any other statute that requires pre-suit notice.  Moreover, as I discuss in the text, the Texas Supreme Court in *Barr v. City of Sinton* did exactly the opposite: it decided the merits of an appeal after noting that the trial court found the plaintiffs failed to give notice as TRFRA requires.  *See* 295 S.W.3d 287, 292 n.8 (Tex. 2009).  Therefore, the majority opinion here plows new ground in Texas jurisprudence.

the merits unless it first rejected the trial court's finding.[7]  Plainly, however, the Texas Supreme Court did not consider that to be the circumstance.[8]

Although the majority opinion concludes otherwise, the Texas Supreme Court's decision in *Roccaforte v. Jefferson County* also suggests that it might disagree with the court's decision here.  *See* 341 S.W.3d 919, 925–27 (Tex. 2011).  There, Jefferson County challenged the plaintiff's failure strictly to comply with the post-suit notice requirement in Local Government Code section 89.0041.[9]  *Id.*

---

[7]  The majority opinion recognizes that *Barr* "undercut[s] [its] conclusion that compliance with the pre-suit notice provision is jurisdictional."  Maj. Op. at 14.  But, in an attempt to reconcile *Barr* with the outcome that it reaches, the majority opinion offers the following: (1) *Barr* "provide[d] no further discussion or analysis as to why the plaintiff's notice was insufficient," and (2) "*Barr* was decided prior to *Arancibia* so the court could not yet rely on *Arancibia*'s guidance" regarding section 311.034.  *Id.*  Both of these points, however, bolster the case for certification to the Texas Supreme Court.  That *Barr* provided no discussion or analysis merely creates more room for doubt about whether the court viewed the plaintiffs' deficient notice as an issue with jurisdictional ramifications.  Moreover, the reference to *Arancibia* is not determinative for the reasons discussed above, namely the permissive and case-specific language that the Texas Supreme Court used in that case.

[8]  The Morgans point out that in the two cases we have decided involving TRFRA claims, we never discussed whether the plaintiffs provided notice by certified mail, return receipt requested.  *See A.A. v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 254–57 (5th Cir. 2010); *Merced v. Kasson*, 577 F.3d 578, 583 (5th Cir. 2009).  If this precise method of notice is a jurisdictional prerequisite, that fact would have been important to—indeed, a necessary condition for—our decisions on the merits.

[9]  Section 89.0041 provides in full:

(a) A person filing suit against a county or against a county official in the official's capacity as a county official shall deliver written notice to:
   (1) the county judge; and
   (2) the county or district attorney having jurisdiction to defend the county in a civil suit.
(b) The written notice *must be delivered by certified or registered mail* by the 30th business day after suit is filed and contain:
   (1) the style and cause number of the suit;
   (2) the court in which the suit was filed;
   (3) the date on which the suit was filed; and
   (4) the name of the person filing suit.
(c) *If a person does not give notice as required by this section, the court in which the suit is pending shall dismiss the suit* on a motion for dismissal made by the

No. 12-40493

The county first contended that section 311.034 applied, making the plaintiff's failure to comply with section 89.0041 a jurisdictional defect. *Id.* at 925. The court rejected this contention, holding that section 89.0041's notice provision is not jurisdictional because "[s]ection 311.034 applies to *prerequisites* to suit, not notice requirements that can be satisfied only *after* suit is filed." *Id.* (citations omitted). The county also asserted that section 89.0041 mandated dismissal of the plaintiff's claim because the plaintiff's notice was hand-delivered rather than mailed. *Id.* at 926.[10] The court disagreed. It reasoned that the plaintiff's substantial compliance with the notice provision was sufficient because "[t]he statute was not intended to create a procedural trap allowing a county to obtain dismissal even though the appropriate officials have notice of the suit." *Id.* at 926 (citations omitted). In a separate opinion, Justice Willett reached the same result but for different reasons. *Id.* at 927–31. He criticized the court's failure to "take the statute at face value," explaining that the court's substantial-compliance standard contradicts "[s]ection 89.0041's use of phrases like 'shall deliver,' 'must be delivered,' 'as required,' and 'shall dismiss,'" which seemingly mandate strict compliance. *Id.* at 928 (Willett, J., concurring) (footnotes omitted).

That eight of nine Texas Supreme Court justices in *Roccaforte* concluded substantial compliance with section 89.0041 was sufficient has significant import here. Like section 89.0041, which explicitly requires that "written notice must be delivered by certified or registered mail," Tex. Loc. Gov't Code

---

county or the county official.

Tex. Loc. Gov't Code § 89.0041 (emphasis added).

[10] *See* Tex. Loc. Gov't Code § 89.0041(c) ("If a person does not give notice as required by this section, the court in which the suit is pending shall dismiss the suit on a motion for dismissal made by the county or the county official.").

No. 12-40493

§ 89.0041(b), TRFRA's notice provision states that "[a] person may not bring an action . . . unless . . . the person gives written notice to the government agency by certified mail, return receipt requested." Tex. Civ. Prac. & Rem. Code § 110.006(a). On their face, both statutes establish specific, exclusive methods for giving notice. The majority in *Roccaforte*, however, concluded that the Texas Legislature did not intend for section 89.0041 to bar a claim "merely because [the] notice was hand-delivered rather than mailed." 341 S.W.3d at 926. It follows that the Texas Supreme Court might similarly determine that the Texas Legislature did not intend for section 110.006(a) to preclude a claim simply because notice was not sent by certified mail, return receipt requested. Therefore, the Texas Supreme Court may disagree with the majority opinion's conclusion here. After all, no one disputes that PISD had actual notice of the Morgans' claim, so the majority opinion's construction of TRFRA "create[s] a procedural trap" of precisely the same type that the *Roccaforte* court rejected. *Cf. Roccaforte*, 341 S.W.3d at 926.

In my view, fidelity to "the principles of a cooperative judicial federalism underlying *Erie*," *Salve Regina Coll.*, 499 U.S. at 239, demands that we afford the Texas Supreme Court an opportunity to decide the novel legal question this case presents. This case is an ideal candidate for certification "to avoid having to make [an] unnecessary *Erie* guess[] . . . ." *Jackson*, 781 F.2d at 397 (internal quotation marks omitted). The majority opinion passes up this option because it "find[s] the statute clear and [is] satisfied that the Texas Supreme Court would apply the statute as written." Maj. Op. at 14. For the reasons above, however, I am not so satisfied. Because Texas precedent leaves room for doubt regarding whether the Texas Supreme Court would agree with the majority opinion, I respectfully dissent.

23